THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PATRICIA M. BARNETT, Defendant-Appellant.

Second District No. 2—87—0536

Opinion filed August 18, 1988.

478

Cox & Simon, of Galena (John W. Cox, Jr., of counsel), for appellant.

J. Christopher Moore, State's Attorney, of Galena (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Patricia Barnett, was charged with attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(a)); two counts of solicitation to commit murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—1(a)); aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(c)); and three counts of forgery (Ill. Rev. Stat. 1985, pars. 17—3(a)(1), (a)(2)). After a jury trial, defendant was found guilty of both counts of solicitation to commit murder, acquitted of the remaining charges, and sentenced to concurrent terms of imprisonment of six and eight years. She appeals, contending that (1) the State failed to prove her guilty of solicitation beyond a reasonable doubt; (2) the jury selection procedure and erroneous jury instructions on the definition of murder, the presumption of innocence, and the State's burden of proof denied her a fair trial; (3) cumulative trial errors, her trial counsel's ineffectiveness and the prosecutor's misconduct denied her a fair trial; and (4) the trial court's erroneous belief that solicitation is a Class X felony mandating a minimum sentence of six years' imprisonment requires resentencing. We affirm defendant's convictions for solicitation, vacate the sentences, and remand for resentencing.

John "Jerry" Arachikavitz testified that he and his wife, Pamela, worked with defendant, and they all became friends. Starting in December 1984, defendant visited the Arachikavitz residence approximately three times a week, bringing food on each occasion. Defendant's and the Arachikavitz' children would play in one room while the adults talked in another room. In January 1985, when defendant

came over she was frequently crying and complained about her husband, Steven Barnett, a Galena police officer, and their financial situation. Jerry testified that defendant appeared more upset each time she visited, and at the end of February 1985 while defendant and the Arachikavitzes were alone, defendant asked Jerry whether he wanted to make some money by "knock[ing] off my husband." Defendant stated that she would pay Jerry $25,000 from life insurance proceeds on her husband's life but that he would have to be killed on duty because defendant would make more money. During the first week of March 1985, defendant asked Jerry whether he was going to take her up on her offer. Pamela was also present during this conversation. Jerry testified that defendant appeared serious. During subsequent visits, defendant kept bringing up the topic of killing her husband, stating that the Arachikavitzes needed the money because Jerry was not working due to a back injury. Jerry testified that, while defendant laughed after his refusals, she appeared serious and had a straight face when she broached the subject. At the end of March 1985, defendant reiterated her request to have Jerry kill her husband and Jerry testified:

> "And she says that you could cut his brake lines. You could have him chase you down Highway 20 towards Elizabeth because I got a motorcycle and have him go off. Or you could just blow up the car with him and Evie in the car and kill two birds with one stone.
>
> * * *
>
> She says I can ride a motorcycle pretty good. If I cut his brake lines I could fly down that road because it was all curves and he could hit one of the curves and go off it.
>
> * * *
>
> She asked if I wanted more I could have it. And she says I'll still give you $25,000.00 if you'll do it. I said no. And then she turned around and says well, how much more do you want and we just left it at that at the moment.
>
> * * *
>
> She was—she looked like she really wanted to do it. And her manner was straight face. No giggles, no nothing. It was just straight out and asked."

Jerry testified that at about April 27, 1985, defendant told the Arachikavitzes that her offer of 10% of the insurance policies still stood, and later said she would increase the payment to $50,000. Steve Barnett testified that defendant knew that she would receive $50,000 if he died on duty. During their conversations, defendant told Jerry

that the place to get her husband would be where he usually takes his breaks, the Galena General Store by the Poco Station on Highway 20. Jerry stated that at first he thought defendant was joking because he couldn't believe any man's wife would want to kill him. Jerry testified that in June 1985 defendant told him that her husband was in the hospital because of poisoning but that he did not go to the police to discuss the conversations he had with defendant until about a year after Steve Barnett was hospitalized.

Pamela Arachikavitz' testimony substantially corroborated her husband's. She testified that during their conversations about killing Steve Barnett, defendant had a straight face but that she thought defendant was joking because she did not think that someone would consider killing one's husband. Pamela testified that her conversations with defendant started scaring her and that the topic of killing Steve Barnett came up 30 to 40 times.

Joan Lincoln, a friend of defendant's, testified that in April or May 1985, defendant came to her house nervous and crying, and when she asked defendant what was wrong, defendant stated that her husband thought someone was going to kill him and he suggested that defendant have his will prepared. Steve Barnett testified that in October or November 1984, he and defendant retained John Cox, an attorney, in connection with the purchase of a new house and defendant then suggested that Mr. Cox be retained to prepare their wills. The wills were not prepared at that time but in May 1985 defendant told her husband that they then had the money to have wills prepared, and it was done. Defendant was the sole beneficiary of her husband's will.

Delbert Kern, an insurance agent, testified that defendant contacted him in November 1984, to discuss homeowner's insurance for a new house. Kern suggested that defendant also purchase life insurance, which she did, and he stated that, while the Barnetts used to carry life insurance through his firm, the policy had lapsed several years ago. Kern testified that he saw defendant sign the life insurance application but did not witness Steve Barnett's signature. Steve Barnett testified that he did not know that an insurance policy on his life had been issued until he received the bill while in the hospital and that he had not applied for the policy. He stated that he formerly had life insurance but that defendant cancelled the policy because they could not afford it.

Prior to *voir dire* examination of potential jurors, defense counsel submitted a list of questions which he requested the trial judge to ask, in a specific sequence, during *voir dire*. The trial judge stated

that while he may not ask defense counsel's questions in the form and sequence submitted, the subject matter of the questions would be covered during *voir dire*. At the commencement of *voir dire*, the trial judge stated:

"[T]hat our system of justice is such that a person is brought to court by the formal method of the State's Attorney charging them with an offense. That charge creates absolutely no presumption. In fact, the opposite is true. A person is always presumed to be innocent unless and until the State can prove them guilty beyond a reasonable doubt."

During *voir dire* examination, the trial court essentially asked each prospective juror if it was understood that there were seven separate charges; that these charges create no presumptions; that defendant was innocent unless the State proved her guilty beyond a reasonable doubt; that defendant did not have to prove anything; and asked whether the juror would find defendant not guilty if the State failed to meet its burden of proof on any one or all of the charges. The trial court did not ask prospective jurors whether they understood that defendant did not have to testify and that her failure to testify could not be held against her.

After *voir dire*, defense counsel objected to the manner in which it was conducted because the questions submitted by defendant were not asked in the precise manner and order submitted, particularly questions which would have allowed defendant to obtain a firm commitment regarding adherence to the principles of presumption of innocence, demanding proof beyond a reasonable doubt of the State of each and every element of each crime charged, and acknowledgement that defendant had no burden of proof and did not have to testify. Defense counsel acknowledged that some of his suggested questions were touched upon but argued that the questions were asked in a mixed manner; he did not cite any specific questions which were not considered at all. Counsel also acknowledged that at the conclusion of each examination the court asked whether he wanted any other questions asked or wanted any areas further explored.

At the conference on instructions a Federal instruction tendered by defendant purporting to define reasonable doubt and expounding on the presumption of innocence was refused by the trial court. The Illinois Pattern Jury Instruction on the presumption of innocence and the State's burden of proof were given at trial. See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 2.03).

The State's tendered instruction No. 12 defined the offense of

murder, as follows: "A person commits the offense of Murder when *** she intends to kill or do great bodily harm to that individual or another." Defendant objected to the instruction on the ground it was confusing and not a concise statement of the offense and suggested it would be cured by modifying the language to read "a person commits the offense of murder if, in the performance of acts which would kill, she intends to kill or do bodily harm to that individual or another." The trial court overruled defendant's objection and gave the instruction as tendered.

The jury found defendant guilty of two counts of solicitation to commit murder, and the trial court sentenced her to concurrent terms of imprisonment of six and eight years. At the sentencing hearing, the trial court, relying on *People v. Pagliuca* (1983), 119 Ill. App. 3d 906, 458 N.E.2d 908, stated that solicitation to commit murder was a Class X felony mandating a minimum six-year term of imprisonment. On appeal, the State agrees with defendant's argument that there is no minimum penalty for solicitation.

Initially, we note that Supreme Court Rule 341 requires the parties on appeal to cite to pages of the record. (107 Ill. 2d R. 341.) While defendant purports to do so in support of her brief, there are a substantial number of inaccuracies which have hindered our review of this case.

Defendant contends first that the evidence was insufficient for a jury to find her guilty beyond a reasonable doubt, characterizing her conversation with the Arachikavitzes as "[r]epeated conversations witha [*sic*] friend over fried chicken and pop, in the presence of an adult witness and minor children." She argues that these conversations do not show an intent to kill but merely that defendant was joking around.

■■ ■ A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense. (Ill. Rev. Stat. 1985, ch. 38, par. 8—1(a).) The intent to commit the crime of solicitation is a state of mind which may be inferred from surrounding circumstances because every sane person is presumed to intend the natural and probable consequences of his or her actions. (*People v. Pagliuca* (1983), 119 Ill. App. 3d 906, 910, 458 N.E.2d 908.) A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that a reasonable doubt of the defendant's guilt exists. When the sufficiency of evidence is challenged, it is not the court's function to retry the defendant; the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

fact finder could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) We conclude that there was ample evidence from which the jury could find that defendant solicited Jerry Arachikavitz with an intent that he kill her husband, Steve Barnett.

■ The Arachikavitzes both testified that defendant, upset with her husband and their financial situation, repeatedly requested Jerry Arachikavitz to kill her husband over a period of time. While the Arachikavitzes testified that, at first, they thought defendant was joking, they noted that during their conversations with her, defendant appeared serious and only joked about the matter after Jerry Arachikavitz denied her requests. The Arachikavitzes testified that defendant made suggestions about how her husband could be killed and stated that he had to be killed while he was working so that she could make more money. Defendant offered Jerry Arachikavitz $25,000, and after he refused her requests, she increased the offer to $50,000. Steven Barnett testified that defendant knew she would receive insurance proceeds of $50,000 if he were killed on duty. Furthermore, while Joan Lincoln, defendant's friend, testified that defendant told her that Steve Barnett suggested that he have a will prepared because he thought someone was going to kill him, Steve Barnett testified that his will was prepared because of defendant's suggestion in October or November 1984 and again in May 1985. Lastly, in November 1984 defendant purchased a life insurance policy on her and Steve Barnett's lives, but Steve Barnett testified that he never applied for life insurance and he first learned that an insurance policy on his life had been issued when he received a bill from the insurance agency while he was in the hospital. We cannot conclude that the evidence merely showed that defendant was joking and find that the verdict is supported by the evidence.

Defendant next contends that the jury selection procedure conducted by the trial court denied her a fair trial because the judge did not ask certain questions suggested, and in the precise order submitted by defense counsel, so as to elicit the bias and prejudices of prospective jurors. Specifically, defendant argues that the trial court's inquiry relative to the presumption of innocence was unclear; the court erred when it asked prospective jurors whether they understood that the State had to prove defendant guilty beyond a reasonable doubt but failed to indicate that this burden of proof applied to each element of each count; and the court erred because it failed to question the jurors on their understanding that defendant did not have to testify and that such failure to testify could not be held

against her. We conclude that the trial court's inquiry relative to the presumption of innocence and the State's burden of proof adequately assured that any prejudices or bias would be discovered, and that defendant has waived any error regarding the trial court's failure to question prospective jurors regarding defendant's right to refrain from testifying.

■■ ■ Generally, a trial court has discretion during the *voir dire* of prospective jurors. (107 Ill. 2d R. 234.) While matters relating directly or indirectly to the law or instructions in a case should not be explored during *voir dire* (107 Ill. 2d R. 234), our supreme court has held that questions relating to the presumption of innocence, the State's burden of proof, and a defendant's right not to testify are matters going to the heart of a juror's bias or prejudice, and that a failure to question jurors on these topics results in prejudicial error requiring reversal. (*People v. Zehr* (1984), 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062.) The court also concluded that, while the subject matter of these questions should be explored during *voir dire*, it is not necessary to ask questions in the precise form submitted by counsel. (103 Ill. 2d at 477.) We conclude that the trial court's failure to ask defense counsel's suggested questions in the precise manner and order submitted was not error and that the examination of prospective jurors relative to the presumption of innocence and the State's burden of proof sufficiently afforded defendant a fair trial. At the commencement of *voir dire*, the judge stated that a formal charge by the State creates no presumption and that the defendant is presumed innocent unless the State can prove her guilty beyond a reasonable doubt. Each juror was asked whether he understood that the State's charges against defendant created no presumption and that defendant was innocent until proved guilty beyond a reasonable doubt. Also, we conclude that the trial court's explanation to potential jurors that the State had to prove defendant guilty beyond a reasonable doubt, and the trial judge's inquiry as to whether the jurors would find defendant not guilty if the State failed to sustain its burden of proof, were sufficient to afford her a fair and impartial jury.

■ We find that defendant has waived any error relative to the trial court's failure to ask potential jurors whether they understood that defendant did not have to testify and that her failure to testify could not be held against her by failing to object or call the court's attention to its omission during *voir dire*. (See *People v. Visnack* (1985), 135 Ill. App. 3d 113, 123-24, 481 N.E.2d 744 (where the trial court agreed to ask defense counsel's tendered question regarding a defendant's right to refrain from testifying during *voir dire* but ne-

glected to do so without objection from defense counsel, the issue is waived).) While defense counsel did object to the manner in which *voir dire* was conducted, his objection was based on the trial court's refusal to ask the tendered questions in the same manner and order submitted. Defendant never specifically brought to the court's attention the court's failure to address defendant's right not to testify during *voir dire* and acknowledged that the trial court inquired, at the conclusion of the court's examination of each juror, whether defendant wanted other questions asked. Defendant also argues that because objections to the *voir dire* of each potential juror were made off the record, we cannot conclude that defense counsel did not object to the trial court's failure to question jurors on defendant's right not to testify. The appellant has a duty to present a complete record on appeal; matters not contained in the record will not be considered by a reviewing court, and any doubts arising from an incomplete record will be resolved against the appellant. (*People v. Hermann* (1986), 150 Ill. App. 3d 224, 227, 501 N.E.2d 842.) We conclude that defendant waived this issue and find no plain error in light of the overwhelming evidence in this case. See *People v. Jackson* (1981), 84 Ill. 2d 350, 359-60, 418 N.E.2d 739.

Defendant also argues that she did not receive a fair trial because the definitional instruction on the offense of murder given to the jury erroneously included a mental state other than an intent to kill. The following jury instruction defining murder was given at trial:

> "A person commits the offense of Murder when she kills an individual, if, in the performance of the acts which cause the death, she intends to kill or *do great bodily harm to that individual or another.*" (Emphasis added.)

The State, citing *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, and *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, agrees that the instruction defining murder was erroneous because solicitation to commit murder requires proof of an intent to kill, and not merely a lesser intent to do great bodily harm, but argues that defendant has waived the issue by not objecting to the instruction at trial.

■ Initially, we note that it is not error to instruct the jury on the definition of murder in a solicitation to commit murder case, but the instruction is not mandatory. (*People v. Carey* (1981), 94 Ill. App. 3d 631, 637, 418 N.E.2d 1119.) The general rule is that where no objection is made at trial to an erroneous jury instruction, the issue is waived. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d

414.) Supreme Court Rule 451(c) provides a limited exception to the waiver rule for substantial defects in instructions if the interests of justice require (107 Ill. 2d R. 451(c)), and this exception will be invoked only to correct grave errors, or in cases where the evidence is so close factually that fundamental fairness requires that the jury be properly instructed. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329-30, 472 N.E.2d 415; *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331.) In *Roberts,* the court considered whether a definitional instruction for murder in an attempted murder case, which erroneously incorporated the alternative mental states of murder other than an intent to kill (see Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)), constituted grave error. The court concluded that "the inclusion of these other mental states in the nonmandatory definitional instruction does not constitute 'grave error' contemplated by the cases cited, which have applied the limited exception to the waiver rule provision of our Rule 451(c)." (*Roberts,* 75 Ill. 2d at 14.) In view of *Roberts* we find no grave error here. It is also apparent that the evidence is not closely balanced in this case so as to invoke the plain error exception to the waiver rule. As previously noted, the evidence was sufficient to find defendant guilty of solicitation to commit murder beyond a reasonable doubt, and there was no evidence which would have permitted the jury to conclude that defendant acted with the lesser mental state intending to only do great bodily harm. Defendant's requests to Jerry Arachikavitz clearly expressed a desire to kill her husband. Accordingly, defendant has waived this issue by not objecting to the instruction on these grounds in trial.

 Defendant also contends that she was denied a fair trial because the trial court failed to properly instruct the jury on the presumption of innocence and the definition of reasonable doubt.

While the trial judge declined to give defendant's tendered Federal instruction on the presumption of innocence and the State's burden of proof, he did give IPI Criminal 2d No. 2.03, which covers the same issues. (See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981).) The concept of reasonable doubt need not be defined, and, where an instruction defining this concept is given, prejudicial error may result. (*People v. Viser* (1975), 62 Ill. 2d 568, 585, 343 N.E.2d 903; *People v. Jenkins* (1980), 89 Ill. App. 3d 395, 398, 411 N.E.2d 1047.) Furthermore, the committee note in Illinois Pattern Jury Instruction No. 2.05 recommends that no instruction defining reasonable doubt should be given (Illinois Pattern Jury Instructions, Criminal, No. 2.05 (2d ed. 1981)), and our supreme court has frequently addressed "the futility of attempting to define it that we

might expect the practice to be discontinued." (*People v. Malmenato* (1958), 14 Ill. 2d 52, 61, 150 N.E.2d 806.) Defendant argues that in *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, the supreme court implied that it would approve of an instruction defining reasonable doubt. We do not agree. Contrary to defendant's argument, in *Bryant*, the court determined that the second paragraph of the instruction on circumstantial evidence, which states that "[y]ou should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence" (Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981)), should no longer be given because it is an attempt to define reasonable doubt in the vocabulary of circumstantial evidence. *Bryant*, 113 Ill. 2d at 511-12.

■■■ Defendant next contends that cumulative trial errors, her trial counsel's ineffectiveness and the prosecutor's misconduct denied her a fair trial. Defendant first refers to the repeated nature of leading questions asked by the prosecutor and her trial counsel's infrequent objections to these questions. Defendant, however, did not identify a specific leading question in her brief, and the questions cited in her statement of facts, which defendant asserts are leading, are actually nonleading in nature. We will not consider this argument. (*People v. Ramirez* (1983), 98 Ill. 2d 439, 472, 457 N.E.2d 31 (an argument raised without citation to evidence in the record which supports the argument will not be considered).) Defendant does list specific leading questions in her reply brief which the State has moved to strike, and we grant the motion. We also grant the State's motion to strike that part of defendant's reply brief which argues that trial counsel was ineffective for requesting a recess in the middle of his cross-examination of Jerry Arachikavitz, "badly breaking the concentration of the jury" because this matter was also raised for the first time in defendant's reply brief. (*People v. Accardo* (1985), 139 Ill. App. 3d 813, 816, 487 N.E.2d 664 (an argument not raised in the initial brief is waived).) Defendant also argues that her trial counsel was ineffective by not allowing defendant to testify, which she now asserts would have eliminated any doubt as to her mental state during her conversations with the Arachikavitzes, and by failing to request that the charges in this case be tried separately. Defendant either fails to cite to the record, or does so inaccurately, to support her argument. Our review of the record discloses nothing to suggest that her trial counsel prevented defendant from testifying or that defendant wanted to testify. Furthermore, the assertion that defendant's testimony would have eliminated any doubt as to her

mental state is pure conjecture. Parenthetically, we note that defendant argues that her trial counsel was ineffective but fails to cite even one case considering the issue of effectiveness of counsel; arguments not supported with citation to authority will not be addressed on appeal. *Ramirez*, 98 Ill. 2d at 472.

■■ Defendant's last contention is that her case must be remanded for resentencing because the trial judge erroneously believed that solicitation is a Class X felony mandating a minimum sentence of six years' imprisonment. During the sentencing hearing, the trial judge stated that solicitation to commit murder is a Class X felony, and "[b]y so classifying it, the legislature has determined that this is a mandatory minimum of six years sentence in this case," and defendant was sentenced to a term of imprisonment of six years on the first solicitation count. On appeal, the State agrees that the case should be remanded for resentencing, citing *People v. Eddington* (1979), 77 Ill. 2d 41, 47, 394 N.E.2d 1185, holding that the solicitation statute (Ill. Rev. Stat. 1977, ch. 38, par. 8—1(b)) provides for no minimum term. (See also Ill. Rev. Stat. 1985, ch. 38, par. 8—1(b).) Because a new sentencing hearing is required when it appears that the trial court's misapprehension as to the permissible sentence influenced the sentencing hearing (*Eddington*, 77 Ill. 2d at 48), and the record here shows that the trial judge's misunderstanding affected defendant's ultimate sentence, we remand for resentencing. *Cf. People v. Moore* (1978), 69 Ill. 2d 520, 521, 372 N.E.2d 666 (where the trial court imposed a four-year minimum term of imprisonment based on its erroneous belief that such minimum term was required, resentencing was necessary).

The State's motion to strike portions of defendant's reply brief, which was taken with the case, is allowed.

Affirmed in part; vacated in part and remanded for a new sentencing hearing.

DUNN and INGLIS, JJ., concur.