THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH L. EAGLIN, Defendant-Appellant.

Third District   No. 3—91—0040

Opinion filed January 15, 1992.—Rehearing denied March 6, 1992.

Lawrence J. Essig, of State Appellate Defender's Office, of Springfield, and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Kenneth L. Eaglin was charged by information with one count of solicitation of murder for hire. (Ill. Rev. Stat. 1989, ch. 38, par.

8—1.2.) He was convicted by a jury and sentenced to 34 years' imprisonment.

The State alleged that Eaglin solicited an undercover officer to commit first degree murder. The victim was to be Joan C. Scott, the Fulton County State's Attorney. Eaglin's purported animosity arose from an attempt by Scott to remove Eaglin's children from his household under charges of neglect. These custody battles, which ran from 1987 until March of 1990, included the filing by Scott of perjury charges against the defendant's wife and his parents. Defendant's wife was also briefly imprisoned on a contempt charge.

At trial, much of the State's evidence came from the testimony of an informant named Joseph Roberts. Roberts began working at Eaglin's construction company in April of 1990. During this time, Roberts and Eaglin had several conversations about Eaglin's custody problems.

On or about June 27, 1990, Roberts allegedly told Eaglin that State's Attorney *Scott* had hired a man named Paul Long to kill *Eaglin's* wife. Long was a former cellmate of Roberts, but there is no evidence that he was actually aware of any of the circumstances described here. Eaglin claims that, out of fear for his family's safety, he wanted to pay off Long.

Defendant and Roberts met several times over the next few days. According to Eaglin, Roberts told him that Roberts had made contact with the hit man and persuaded him to kill State's Attorney Scott for payment instead of killing Mrs. Eaglin. Roberts also allegedly told Eaglin that if he attempted to back out of the deal, his family would be killed.

On July 12, 1990, Roberts telephoned Officer Daniel Daly of the Fulton County sheriff's department. He told Daly that Eaglin was planning to have State's Attorney Scott killed. He further stated that Eaglin had inquired whether Roberts knew of anyone who could commit the crime. When Roberts volunteered Long's name, Eaglin reportedly discussed payment and inquired about the length of time Long would need to prepare.

On July 26, 1990, at the request of law enforcement officials, Roberts went to Eaglin's house and told Eaglin that the hit man was ready to proceed. Eaglin provided Roberts with a photo of State's Attorney Scott which had been clipped from a newspaper. This conversation was recorded via an eavesdropping device which was hidden on Roberts.

The next day, again at the request of the police, Roberts telephoned Eaglin. He told Eaglin that Long wanted to talk to Eaglin. Roberts then handed the phone to Gerald Kempf, an undercover officer who was portraying Long. The defendant never affirmatively stated that he wanted Scott dead, but agreed to pay Kempf $2,000 to carry out the scheme. This conversation, which was also recorded, was the basis for the solicitation charge.

Kempf and the defendant then arranged to meet at a parking lot. After a short conversation there, Eaglin was arrested.

The complainant in the case was Joan Scott, the Fulton County State's Attorney. Prior to the trial, on August 8, 1990, the trial court removed Scott as the prosecutor because of the conflict of interest. The court then appointed Kevin Lyons, the Peoria County State's Attorney, as a special prosecutor. The original information, which had been brought by Scott on August 2, was dismissed in favor of one brought by Lyons. The defendant objected to the appointment of Lyons, but his objection was overruled.

At trial, defendant tendered jury instructions on the defense of entrapment. The trial judge refused these instructions on the basis that defendant had denied committing the crime, relying on *People v. Gillespie* (1990), 136 Ill. 2d 496, 557 N.E.2d 894.

The jury found the defendant guilty of solicitation of murder for hire, he was sentenced and this appeal followed.

The defendant's first contention is that the trial court erred in refusing to instruct the jury on entrapment. The defendant does not contend that the evidence established entrapment as a matter of law. Instead, he merely argues that he had presented evidence of the defense and thus was entitled to a jury instruction on the issue.

Traditionally, the rule has been that it is a precondition to raising the entrapment defense that the defendant admit that the crime was committed and that he committed it. *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872; *People v. Moran* (1941), 378 Ill. 461, 38 N.E.2d 760.

The United States Supreme Court, however, has ruled that a defendant is entitled to have the jury instructed on the entrapment defense whenever there is sufficient evidence from which a reasonable juror could find entrapment, even if the defendant denies one or more elements of the crime. *Mathews v. United States* (1988), 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883.

■■ The Illinois Supreme Court recently reexamined the issue in light of *Mathews*. (*People v. Gillespie* (1990), 136 Ill. 2d 496, 577 N.E.2d 894.) There, the court determined that *Mathews* was not of

constitutional magnitude, and thus need not be followed by the State courts. Accordingly, the court reaffirmed the long-standing rule that in Illinois, a defendant who denies committing the offense charged is not entitled to have the jury instructed on the entrapment defense.

The record here reveals that Eaglin did not admit to the commission of the crime. He also repeatedly denied having the intent to kill, which is a necessary element of the crime. At trial, he testified "I didn't want her killed *** I didn't want to say 'kill' when I didn't want her killed." At a later point during direct examination by his attorney, Eaglin's denials are even more explicit:

"Q. Was it ever your intention to hire anyone to kill Joan Scott?

A. No, sir.

Q. On July 27, 1990, at any time did you hire Paul Long or Gerald Kempf or anyone—

A. No, I did not.

Q. —to kill Joan Scott?"

Having denied the crime, the defendant was not entitled to an entrapment instruction. The trial court was correct in finding that *Gillespie* is dispositive and in denying the instruction.

■ The defendant next contends that the trial court gave an erroneous jury instruction defining the offense of first degree murder. Specifically, the defendant claims that the instruction was defective because it included a mental state other than intent to kill, which is the requisite state for solicitation of first degree murder.

The jury instruction to which defendant objects is as follows:

"A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death, he intends to kill *or do great bodily harm to that individual or another.*" (Emphasis added.)

Initially, we note that this was only a definitional instruction. This instruction did not address the issues or the burden of proof. Furthermore, it is not mandatory to instruct the jury on the definition of murder in a solicitation to commit murder case. *People v. Barnett* (1988), 173 Ill. App. 3d 477, 527 N.E.2d 1071; *People v. Carey* (1981), 94 Ill. App. 3d 631, 418 N.E.2d 1119.

No objection was made at trial nor was the issue raised in a post-trial motion. The general rule is that where no objection is made at trial to an erroneous jury instruction, the issue is waived. *People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414.

Supreme Court Rule 451(c) allows a reviewing court to examine substantial defects in jury instructions despite the defendant's failure to timely object. (134 Ill. 2d R. 451(c).) Rule 451(c) only applies to correct grave errors, or in cases where the evidence is so close factually that fundamental fairness requires that the jury be properly instructed. *Thurman*, 104 Ill. 2d at 329-30, 472 N.E.2d at 415.

A similar issue was addressed in *People v. Barnett* (1988), 173 Ill. App. 3d 477, 527 N.E.2d 1071. There, the defendant was also charged with solicitation of murder. The instruction given was identical. The State agreed that the instruction was erroneous because solicitation requires proof of an intent to kill. The court found that the issue had been waived because no objection was made at trial and any error did not fall into the limited exception provided by Rule 451(c). "[T]he inclusion of these other mental states in the nonmandatory definitional instruction does not constitute 'grave error' contemplated by *** Rule 451(c)." *Barnett*, 173 Ill. App. 3d at 487, 527 N.E.2d at 1078.

The jury was properly instructed as to the issues in the case and to the burden of proof. There is no evidence that this surplusage confused the jury as to the necessary elements of the offense. While the instruction was erroneous, any error was waived by the defendant's failure to make a timely objection.

■ The defendant's final contention is that the trial court exceeded its authority in appointing Kevin Lyons as special prosecutor. The defendant's argument is twofold: first, if Lyons was acting in his official capacity as the Peoria County State's Attorney, he was out of his jurisdiction and thus without authority to prosecute; and second, if Lyons was acting in his capacity as a private attorney, his appointment was improper under a statute that allegedly forbids outside employment.

The appointment of a special prosecutor is controlled by section 3—9008 of the Sheriff's Merit System Law (Ill. Rev. Stat. 1989, ch. 34, par. 3—9008). That section provides, in pertinent part:

"Whenever the State's attorney is *** interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed *shall have the same power and authority in relation to such cause or proceeding as the State's attorney would have had if present and attending to the same* ***. Any attorney appointed for any reason under this Sec-

tion *shall possess all the powers and discharge all the duties of a regularly selected State's attorney* under the laws of the State to the extent necessary to fulfill the purpose of such appointment \*\*\*." (Emphasis added.)

It is clear that Lyons was not acting in his capacity as Peoria County State's Attorney. He was acting as a special prosecutor for Fulton County. As such, he stood in the shoes of the Fulton County State's Attorney and had complete authority to prosecute Eaglin pursuant to section 3—9008 (Ill. Rev. Stat. 1989, ch. 34, par. 3—9008). Therefore, defendant's first argument is without merit.

As to the defendant's second contention, he cites section 3—9009 (Ill. Rev. Stat. 1989, ch. 34, par. 3—9009) for the proposition that State's Attorneys are prohibited from any outside employment. That argument, however, misconstrues the statute. That section provides:

> "The State's attorney shall not receive any fee or reward from or in behalf of any private person for any services within his official duties and shall not be retained or employed, except for the public, in a civil case depending upon the same state of facts on which a criminal prosecution shall depend." Ill. Rev. Stat. 1989, ch. 34, par. 3—9009.

That section is not a *per se* ban on outside employment by State's Attorneys. Instead it merely precludes a State's Attorney from receiving compensation or employment in two situations which could readily give rise to a conflict of interest. The fact that Lyons was the Peoria County State's Attorney is of no consequence to this action. It does not prevent him from being appointed as a special prosecutor for a neighboring county on an *ad hoc* basis.

Accordingly, for the foregoing reasons, we affirm the defendant's conviction.

Affirmed.

McCUSKEY and HAASE, JJ., concur.