Kenneth **EAGLIN**, Petitioner–Appellee,

v.

George C. **WELBORN**, Warden, and Roland W. **Burris**, Attorney General of Illinois, Respondents–Appellants.

No. 93–1561.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1993.

Decided Oct. 28, 1994.

Reargued En Banc April 26, 1995.

Decided June 8, 1995.

Maribeth Egert Dura (argued), Corrigan & Dura, Peoria, IL, for petitioner-appellee.

Penelope Moutoussamy George (argued), Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondents-appellants.

Before POSNER, Chief Judge, and CUMMINGS, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.

POSNER, Chief Judge.

We granted rehearing en banc in this habeas corpus matter to consider whether to overrule *Whipple v. Duckworth*, 957 F.2d 418 (7th Cir.1992), on which the district judge and the panel had relied in deciding that the petitioner was entitled to a new trial. 41 F.3d 268 (7th Cir.1994). The panel reasoned that a common law rule in force in Illinois, *People v. Gillespie*, 136 Ill.2d 496, 145 Ill.Dec. 915, 557 N.E.2d 894 (1990), forbidding a defendant to raise a defense of entrapment without admitting that he committed the crime that he claims to have been entrapped into committing, violates procedural rights guaranteed to state criminal defendants by

the Fourteenth Amendment. To be more precise, the rule is that a defendant may not plead entrapment without admitting the commission of the acts constituting the elements of the crime. He can deny that those acts are punishable. He can, for example, without forfeiting the defense, claim that the statute was being applied to him ex post facto or was otherwise inapplicable, or invalid. In some states, including Illinois, he can claim he lacked the requisite state of mind for criminal liability. *People v. Jensen,* 37 Ill.App.3d 1010, 347 N.E.2d 371, 375 (1976); cf. *United States v. Henry,* 749 F.2d 203 (5th Cir.1984). *Whipple* held, in a case not involving entrapment, that a criminal defendant has a constitutional right to have the jury instructed on any defense, recognized by state law, that has some basis in the evidence. 957 F.2d at 423. The panel in the present case concluded that the common law rule against pleading innocence and entrapment in the alternative is inconsistent with this holding of *Whipple.*

The state argues that regardless of the merits of Eaglin's case, the granting of any relief to him is barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which held that federal habeas corpus is not available to state prisoners who want to assert rights that they could not have asserted in their criminal proceedings in state court because the rights had not yet been declared. See also *Gilmore v. Taylor,* —— U.S. ——, ——, 113 S.Ct. 2112, 2116, 124 L.Ed.2d 306 (1993). Although the rule that forbids pleading innocence and entrapment in the alternative had been widely criticized, and had been rejected for federal criminal trials in *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), it had not been declared unconstitutional. Indeed, the Supreme Court of Illinois had in the *Gillespie* case expressly reaffirmed the rule after reconsidering it in light of *Mathews.* So *Whipple,* to the extent it invalidated the Illinois rule (as the panel in this case believed it had done), created a new rule, which could not be applied retroactively. But Eaglin's conviction did not become final until after *Whipple* was decided. So the principle of *Teague* is inapplicable unless the application of *Whipple* to the rule against pleading inno-

cence and entrapment in the alternative, an application made for the first time by the panel in the present case, is itself a new rule within the meaning of *Teague.* The Illinois rule invalidated by the panel does not prevent a defendant from pleading the defense of entrapment, and so does not fall squarely under *Whipple.* It puts a price on pleading the defense, but that is not the same thing, and therefore *Whipple* would have to be extended to cover this case.

■ The state did not argue *Teague* in the district court, however, and ordinarily the failure to present a ground in the trial court forfeits it in the appellate court. But whether this is true when the ground is *Teague* has been cast into some doubt by the Supreme Court's very recent decision in *Goeke v. Branch,* —— U.S. ——, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam). The state in that case had cited *Teague* in the district court, and when at the oral argument of the appeal the petitioner tendered to the court of appeals a ground for affirmance that had not been raised in the district court, the state's lawyer had invoked *Teague* as a bar to that ground too. After describing this history, the Supreme Court said: "The record supports the State's position that it raised the *Teague* claim. The State's efforts to alert the Eighth Circuit to the *Teague* problem provided that court with ample opportunity to make a reasoned judgment on the issue. The State did not waive the *Teague* issue; it must be considered now; and it is dispositive." *Id.* at ——, 115 S.Ct. at 1276–77 (citation omitted).

There are three ways to take this. The first is that a state is free to argue *Teague* for the first time in the court of appeals, period. The second is that confronted by a brand new ground at the appellate stage, the state can argue *Teague* for the first time since, unless gifted with prevision, it could not have done so in the district court. Under the third interpretation the state may do this if but only if it cited *Teague* in the district court against the grounds actually presented to that court. The second interpretation is at once the most sensible and the least controversial. It would be unreasonable (and a burden on the courts) to require a party to

anticipate all the new grounds that his opponent might present on appeal and to contest each of them in the trial court even though they had not yet been raised and might never be. The third interpretation, it is true, is consistent with the Supreme Court's emphasis on the state's having cited *Teague* against different grounds in the district court; but it would still represent a startling expansion in the doctrine of waiver; and we must bear in mind that *Goeke v. Branch* was decided on the certiorari papers, without oral argument or full briefing. The first interpretation is consistent with the Supreme Court's (and our own) generally more relaxed attitude toward failure to preserve issues by raising them at the earliest feasible opportunity in cases involving considerations of comity—the mutual respect of sovereigns. *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987); *Schlesinger v. Councilman*, 420 U.S. 738, 743, 95 S.Ct. 1300, 1305, 43 L.Ed.2d 591 (1975); *Younger v. Harris*, 401 U.S. 37, 40–41, 91 S.Ct. 746, 748–49, 27 L.Ed.2d 669 (1971); *Thomas v. Indiana*, 910 F.2d 1413, 1415–16 (7th Cir.1990); *Stone v. City & County of San Francisco*, 968 F.2d 850, 855–56 (9th Cir.1992). But it would be contrary to the statement in *Goeke v. Branch* itself that "a court need not entertain the [*Teague*] defense if the State has not raised it." —— U.S. at ——, 115 S.Ct. at 1276. See also *Hanrahan v. Thieret*, 933 F.2d 1328, 1337 n. 10 (7th Cir.1991); *Falconer v. Lane*, 905 F.2d 1129, 1137 (7th Cir.1990).

■■■ *Goeke v. Branch* makes clear, at least, that if the state either argues *Teague* in the district court or had no reasonable opportunity to argue it there, the court of appeals may not invalidate the petitioner's conviction without considering the bearing of *Teague*. If as in the present case the state waives the defense, the court of appeals still may consider it if it wants to, *Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 952, 127 L.Ed.2d 236 (1994); *Schiro v. Farley*, —— U.S. ——, ————, 114 S.Ct. 783, 788–89, 127 L.Ed.2d 47 (1994); *Thomas v. Indiana, supra*, 910 F.2d at 1416, but it is not required to do so. We do not wish to do so in the present case, which we "en banced" in order to examine the continued validity of

*Whipple*. For completeness we add that a court of appeals must consider the bearing of *Teague*, even if an argument based on that decision is not waived, only if the court is minded to invalidate the petitioner's conviction. If there is another ground of affirmance besides *Teague*, the court is not obliged to base its decision on *Teague* rather than on the other ground. This is an additional reason why we are not compelled to apply *Teague* to this case.

The facts, at least as Eaglin would like us to believe them and as a jury might (if instructed as he had wished) have found them, illuminate the reason for the criticism, culminating in *Mathews*, of the rule against pleading entrapment without admitting commission of the crime. Joan Scott, the state's attorney of an Illinois county, had attempted to remove Eaglin's children from his household because of neglect. In the ensuing custody battles, which ran from 1987 to the early part of 1990, Scott filed perjury charges against Eaglin's wife and parents and had the wife imprisoned, albeit briefly, on a charge of contempt. In June of 1990, when Scott was attempting to end the Eaglins' parental rights and put their children up for adoption, a former felon named Joseph Roberts, recently hired by Eaglin to work for Eaglin's construction company, told the Eaglins that there was a contract out on the life of Mrs. Eaglin. This (all agree) was a lie. According to Eaglin, Roberts elaborated upon the lie the next day, telling him that the hit man was named Paul Long and that he had been hired by none other than Joan Scott, the prosecutor, who wanted to make Eaglin "worm and squirm." This bizarre fabrication was—again according to Eaglin—soon followed by another: that Roberts had persuaded Long to kill Scott instead, provided of course that Eaglin would pay Long. Eaglin claims that he told Roberts that he didn't want anyone killed—he just wanted himself and his family protected—but that Roberts had replied that the deal had been made and it was too late to back out: Long would kill Eaglin, his wife, and his children, unless Eaglin honored the contract and paid Long $5,000 through Roberts.

Roberts, again according to Eaglin, badgered him for two weeks for the money without success. Roberts then called the police and told them that Eaglin wanted Scott killed and had approached him for assistance. Now working for the police as an informant, Roberts visited Eaglin, telling him the hit man was ready to proceed. Eaglin gave Roberts a newspaper photograph of Scott to help the hit man identify her. In a series of surreptitiously recorded conversations, one with a police officer named Kempf who was impersonating Long (a real person, but not a party to any scheme to kill Mrs. Eaglin or prosecutor Scott), Eaglin agreed to pay "Long" $2,000—and offered him an additional $500 to "thump" someone else, who owed Eaglin money. Eaglin never said outright what he wanted "Long" to do to Joan Scott for the money, but he kept repeating, "Do what you want. I don't care." Eaglin was arrested after a meeting with "Long," convicted by a jury of solicitation to commit first-degree murder, and sentenced to 34 years in prison. *People v. Eaglin*, 224 Ill. App.3d 668, 167 Ill.Dec. 8, 586 N.E.2d 1280 (1992). He denied that he had committed the crime, and in consequence was forbidden at the trial to present evidence of entrapment or have the jury instructed on the defense. This ruling was upheld on appeal (*id.*, 167 Ill.Dec. at 11, 586 N.E.2d at 1283) on the authority of the *Gillespie* decision.

Eaglin's testimony was in conflict with Roberts's and for all we know may have been completely false on every point on which there was a conflict—it is none too plausible—in which event a defense of entrapment would fail regardless. Even if Eaglin's testimony had been believed in its entirety, it is far from plain that he would have had a good defense. Under Illinois as under federal law, private entrapment is not a defense at all, see Ill.Rev.Stat.1989, ch. 38, ¶ 7–12; *United States v. Hollingsworth*, 27 F.3d 1196, 1203 (7th Cir.1994) (en banc), and the alleged threats constituting the entrapment occurred before Roberts became an agent of the state—at a time when, if Eaglin's testimony is credited, Roberts was engaged in a private extortion racket. The jury is unlikely to have believed *all* of Eaglin's testimony, moreover, for it included repeated denials

that he hired Long to kill Scott and yet the jury convicted him. We lay all these features of the case to one side. The state does not argue that the entrapment if any was private, and with that point waived the panel was entitled to reason as it did that "if the jury had been instructed on entrapment and Eaglin's counsel permitted to argue that his statements and conduct were induced by the false representations as to Scott's conduct and the false threats of bodily harm reputedly made by Roberts which were subsequently aided and abetted by Deputy Kempf alias Long, it might not have believed Eaglin's statements that he did not want Scott killed while at the same time believing that he had been induced by those misrepresentations by state agents to agree to Scott's death." 41 F.3d at 274.

Thus the challenged rule put Eaglin to a difficult choice. No matter, says the state; there is no federal constitutional right to present affirmative defenses, at least affirmative defenses not based on federal law. And while the defense of entrapment is rooted in a view of the relation of the state to the citizen—that the state should leave objectively harmless people alone, *United States v. Hollingsworth, supra,* 27 F.3d at 1203—no one supposes that the defense is itself one of the liberties that the Constitution protects. If there is no federal constitutional right to plead entrapment—and there is none—then, the state concludes, contrary to *Whipple*, there is no federal constitutional right to have a jury instructed on, or to present evidence in support of, the defense.

■ A state is free within extremely broad limits to decide upon the elements of a crime. But having decided upon them it may not convict without proof beyond a reasonable doubt that every element was present in the particular case, and therefore without the jury's being instructed on each element. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 703–04, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975). It can be argued that, likewise, while a state need not recognize particular affirmative defenses (always excepting those required by the federal Constitution) or assign the burden of proof to

the state to negate the defense, as distinct from assigning the burden of proving the defense to the defendant, *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), once it does recognize a defense it may not convict without giving the defendant a chance to show that his conduct brought him within it.

We are not persuaded. It is true that at argument the state conceded that the constitutional right to counsel extends to affirmative defenses; a state cannot say to a criminal defendant, you may have a lawyer to contest the state's case, but you will have to present your affirmative defenses on your own. But the concession is not fatal. To deny a defendant the assistance of counsel is to deny him the assistance of counsel. To refuse to let him present a state-created, not federally required, defense is, as a first approximation anyway, at worst merely to make an error of state law; and if there is one fixed star in the confusing jurisprudence of constitutional criminal procedure, it is that a violation of state law does not violate the Constitution. E.g., *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

■ A violation of state law, substantive or procedural, could however result in a denial of due process, and hence in a violation of the Constitution, if it created a serious risk of convicting an innocent person. *Id.* at 72, 112 S.Ct. at 482; *Butler v. McKellar,* 494 U.S. 407, 416, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990); *Ferrier v. Duckworth,* 902 F.2d 545, 548 (7th Cir.1990). This principle might be thought to come into play if a defendant were forbidden to present a defense that bore on innocence, such as the defense of privilege (the defendant was the public executioner) or of self-defense (where the defendant would in fact have been killed had he not killed his assailant)—yet *Martin v. Ohio, supra,* allowed the state to place the burden of proof of self-defense on the defendant. And not all defenses even bear on innocence. The best example happens to be entrapment. The very premise of the entrapment defense, as understood in modern cases, is that the defendant committed a crime. It was not

always so. Originally the defense of entrapment was conceived of either as a denial of an element of the crime, as in *State v. Mantis,* 187 Pac. 268 (Idaho 1920), and *Woo Wai v. United States,* 223 Fed. 412, 415 (9th Cir.1915), or as negating consciousness of guilt, as in *United States v. Healy,* 202 Fed. 349 (D.Mont.1913), the first federal case of entrapment, where the entrapper's resemblance to a white man made the defendant "blameless" in committing the strict-liability offense of selling liquor to an Indian. But today entrapment is an excuse for, not a denial of, crime. A defendant prevented from asserting the defense in violation of state law cannot complain that the violation created a peril of convicting an innocent person.

Even if all this is wrong, Eaglin must lose. There was no violation of state law. The ruling in Eaglin's case that he could not plead entrapment followed directly from the decision of the Supreme Court of Illinois in the *Gillespie* decision authoritatively declaring the law of Illinois regarding the pleading of innocence and entrapment in the alternative. So the issue comes down to whether anything in the Constitution forbids a state to confine the defense of entrapment to defendants who admit the crime, as Illinois has done. The fact that states do not have to recognize a defense of entrapment at all implies considerable, perhaps plenary, freedom for the states in fixing the limits of the defense. Almost half the states still follow the rule that the defense of entrapment is available only to defendants who admit their crimes. Annot., 5 A.L.R.4th § 1128 (1994); "Criminal Law," 21 *Am.Jur.2d* § 208 (2d ed. 1995). The opinion of these states on the question is entitled to considerable respect, especially when it is not in conflict with any specific federal right. The reasoning of these states is easy to see, though not compelling. There is a logical inconsistency in claiming both that one did not commit a crime and that one was induced to do so by a government agent. It is like claiming not to have been the killer and to have killed in self-defense. The making of inconsistent defenses is likely to confuse the jury and to bring public opprobrium on the criminal justice system for tolerating such monkeyshines.

502

This is especially so in the case of a defense like entrapment which presupposes that the defendant is a criminal. It is a defense limited to criminals and perhaps someone wanting to take advantage of such a defense should admit that he is a criminal, rather than trying to have it as it were both ways—to be acquitted if innocent and acquitted if guilty too. The alternative pleading of inconsistent defenses is now allowed in civil cases, but criminal cases are supposed to be shorter and simpler, and the criminal process more transparent and intuitive, than the civil.

■■■ But whether the rule in force in Illinois is good or bad really isn't the issue at all. The Constitution does not require the states to adopt the latest and best thinking on criminal procedure or any other subject. *Bell v. Duckworth*, 861 F.2d 169 (7th Cir. 1988). The Constitution places a number of constraints on the criminal process of the states but if none of the constraints is violated the state is free to proceed as it wishes. Eaglin thus cannot prevail without finding a constitutional peg on which to hang his claim. The nearest to being within his grasp is the due process clause. If despite the arguments that can be made on behalf of the rule forbidding the pleading of entrapment and innocence in the alternative the rule created a serious risk of convicting an innocent person, it might, as we have already seen, violate the due process clause. The challenged rule creates no such risk, or more precisely does not exacerbate the risk that is always present of a mistaken conviction. The criminal justice system is designed in a host of ways to minimize the risk of convicting the innocent. An innocent person, having all these protections, has no need to plead a defense of entrapment. He has everything that due process entitles him to. The defense of entrapment is a doctrine of mercy for criminals, an acknowledgment of human frailty and a check on the zeal of law enforcement authorities. It is not needed by the innocent person who has been wrongly accused.

■■■ There is no greater merit to the suggestion that forbidding the pleading of the defense in the alternative violates the right against compelled self-incrimination.

The government is allowed to reward criminal defendants for their admissions. This is done routinely in sentencing. Merely consider the provision in the federal sentencing guidelines allowing a sentencing discount for "acceptance of responsibility" by the defendant. U.S.S.G. § 3E1.1. Qualifying for the discount almost always requires pleading guilty and thus surrendering the right not to be compelled to testify against oneself, yet is not deemed to violate the self-incrimination clause. *Ebbole v. United States*, 8 F.3d 530, 535–37 (7th Cir.1993). Confining the defense of entrapment to those who admit having committed the offense operates no differently.

*Whipple* is overruled, the decision of the district court granting the petition for habeas corpus is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

CUDAHY, Circuit Judge, with whom ILANA DIAMOND ROVNER, Circuit Judge, joins, concurring:

While it is incorrect to condemn Illinois's view of the entrapment defense as unconstitutional, the majority opinion goes too far in justifying Illinois's rule. I do not agree that entrapment is necessarily a defense for "criminals." Instead, the point behind the defense is that *but for* government inducement, no criminal motive would have arisen. In *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the Supreme Court's first recognition of the entrapment defense, the Court said:

> The defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct.

287 U.S. at 452, 53 S.Ct. at 216. The defense of entrapment, therefore, exists for the purpose of demonstrating that "the criminal design originates with the officials of the Government, [when] they implant in the mind of an innocent person the disposition to commit the alleged offense." *Id.* at 442, 53 S.Ct. at

212–13. It is decidedly *not* a defense ordinarily available to "criminals." Nor does the defense permit a court to consider a defendant a "criminal" merely because he has committed a prohibited act.

The view that in entrapment cases the government is the source of the criminal motive has been reaffirmed again and again. *See Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958) ("a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal"); *United States v. Russell,* 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973) ("when the Government's deception actually implants the criminal design in the mind of the defendant ... the defense of entrapment comes into play"); *Jacobson v. United States,* 503 U.S. 540, 548, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 ("Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act....").

This aspect of entrapment in fact gives rise to the requirement that a defendant who is predisposed to commit the crime may not avail himself of the defense. *See Sorrells,* 287 U.S. at 451, 53 S.Ct. at 216. This Court has only recently endorsed this requirement in *United States v. Hollingsworth,* 27 F.3d 1196, 1199 (7th Cir.1994) (en banc), where we held that *mere willingness* to commit a crime is not sufficient to negate the availability of the entrapment defense. 27 F.3d at 1199. Instead, the "defendant must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so." 27 F.3d at 1200. In other words, defendants that society regards as "criminal" will not likely be able to avail themselves of the entrapment defense (at least insofar as they seek to use that defense in an area in which they have a past of criminal conduct).

By the same token, the defense does not allow us to regard a defendant as "criminal" merely because he engaged in a prohibited act. *Hollingsworth* teaches as much by demanding a showing of predisposition over and above willingness. 27 F.3d at 1199 ("Their willingness to commit the crimes to which the government invited them cannot be decisive. Predisposition requires more."). The defense itself thus holds blameless one who lacks a criminal predisposition, despite his having engaged in a prohibited act. Because the defendant would not have engaged in the prohibited act unless induced by the government, he is not a threat to society meriting the attention of the criminal law. *United States v. Hollingsworth,* 9 F.3d 593, 598 (7th Cir.1993) (panel opinion).