Dale A. WHIPPLE, Petitioner–Appellant,

v.

Jack R. DUCKWORTH, Warden, Superintendent of Indiana Reformatory, Respondent–Appellee.

No. 91–1087.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1991.

Decided March 3, 1992.

Rehearing Denied April 2, 1992.

Charles A. Asher (argued), South Bend, Ind., for Dale A. Whipple.

Thomas D. Quigley (argued), Office of the Atty. Gen., Indianapolis, Ind., for Jack A. Duckworth.

Paul Mones, Santa Monica, Ca., for National Clearinghouse for Defense of Battered Women and National Center for Institutions and Alternatives.

Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

After a childhood of abuse of himself and his sister, Dale Whipple killed his mother and father. The jury found Whipple "guilty but mentally ill" on two counts of murder and the Indiana Supreme Court upheld the conviction. On appeal in this Court, Whipple seeks collateral relief on the basis that the trial court's failure to submit to the jury Whipple's defense theory of self-defense and the defense of others violated his constitutional rights.

## I.

Throughout their lives, Dale and Penny Whipple were subjected to physical and mental abuse at the hands of their parents. Defendant, Dale Whipple, testified at trial that during December 1984, he was frequently beaten and experienced extreme pain at least every day. At some time in December, after Whipple's father severely beat him for having candy bars in his room, Dale Whipple, then 17 years old, formulated a plan to kill his parents. According to the Indiana Supreme Court,

> "On the evening of January 1, 1985, the Whipple family returned home from visiting nearby relatives. Mr. Whipple went to bed. Defendant asked his mother to go with him to the garage on the pretext of looking at something outside the garage window. Once inside the garage, defendant killed his mother with several blows of an ax to her back and head. Defendant then proceeded to his parents' bedroom and killed his father with the same ax."

*Whipple v. State*, 523 N.E.2d 1363, 1365–1366 (Ind.1988).

Whipple originally attempted to conceal his involvement in the crime by discarding evidence of the crime and pretending to discover his mother's body. However, he later confessed to both killings. The jury found him "guilty but mentally ill" on two counts of murder and he was sentenced to concurrent terms of 30 years of imprisonment for his father's murder and 40 years of imprisonment for his mother's murder.

The Indiana Supreme Court affirmed Whipple's conviction and held that the trial court's refusal to instruct the jury on the defenses of self-defense and defense of others was proper. According to the Indiana Supreme Court, the threat of harm to Dale or his sister was too temporally remote to be "imminent" for the purpose of self-defense or defense of others as a matter of Indiana law.[1] Therefore, the Indiana Supreme Court upheld the trial court's refusal to instruct the jury on Whipple's proffered defense theory.

Whipple sought collateral relief from the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 2254. The district court, finding no constitutional error, denied Whipple's petition for a writ of habeas corpus and issued an order certifying probable cause for appeal. On appeal, we assume jurisdiction under 28 U.S.C. § 2253.

## II.

### A. Procedural Default

■ Before addressing the merits of Whipple's challenge, we consider the state's allegation that Whipple failed to present his claims fairly to the Indiana Supreme Court. The State maintains that Whipple may not raise his federal claims on habeas review because he failed to present those claims adequately to the Indiana Supreme Court. Specifically, the State asserts that Whipple waived two particular claims because of procedural default—his constitutional claim concerning the trial court's failure to present an instruction on self-defense and the defense of others, and his factual claim regarding the "daily pain" he experienced throughout December 1984.

---

1. The Court wrote "We find that the absence of imminent or impending danger presented by the victims in this case, as evidenced by the remoteness in time between the murder of the victims and the last physical assault inflicted upon either defendant or his sister, and by the fact that the father was asleep and the mother was in a non-threatening disposition on the night of the killings, precludes the successful assertion of the defense of self or defense of others as a matter of law." *Whipple v. State,* 523 N.E.2d 1363, 1367 (Ind.1988).

Ordinarily a prisoner who seeks federal habeas relief must raise his federal claims in state court before proceeding to federal court. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) (concluding that "the substance of a federal habeas claim must first be presented to the state courts"). See also *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir. 1983) (en banc). Although general principles of procedural default exempt a narrow category of cases,[2] Whipple does not argue that his case warrants such an exemption. Instead, he contends that this Court may review his constitutional challenge because he fairly presented that claim to the Indiana Supreme Court on direct appeal, even though he never explicitly mentioned the claim's constitutional foundation.

▌ This case presents a similar question to that raised in *United States* ex rel. *Sullivan v. Fairman*—"whether and under what circumstances a state prisoner who has fully presented to the state court the substance of a claim that forms the basis of the constitutional deprivation alleged in the prisoner's habeas petition, but has not done so in explicit constitutional terms, may be held to have sufficiently apprised the state court of the potential existence of an error of constitutional dimension." 731 F.2d 450, 453 (7th Cir.1984). In *Fairman,* we resolved that question by discerning whether the claim fairly alerted the state court to the constitutional issue so that the state court had an opportunity to remedy any constitutional deficiencies. See *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Four specific factors guided our determination of the adequacy of the petitioner's previous presentation of issues in state court: reliance on federal cases employing constitutional analysis, reliance on state cases employing constitutional analysis, assertion of the claim in particular constitutional terms, and allegation of a pattern of facts within the mainstream of constitutional litigation. *Fairman,* 731 F.2d at 454 (7th Cir.1984) (citing *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982)). Turning to these same factors for guidance in this case, we conclude that Whipple fairly presented his constitutional challenges to the Indiana Supreme Court even though he did not cite "book and verse on the federal constitution." *Fairman,* 731 F.2d at 453 (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958)).

Whipple's brief in the Indiana Supreme Court claimed deprivation of an entitlement "to have a jury determine the issue of his defense of himself and his sister" (Def.Br., Ind.Sup.Ct. 52). Whipple argued that the jury must be "instructed on any theory of the defense which has any foundation in the evidence regardless of the strength of that evidence" (Def.Br.,Ind.Sup.Ct. 17). Although Whipple did not identify the source of his alleged entitlement, he cited *Cyrus v. State,* 269 Ind. 461, 381 N.E.2d 472, 474 (1978), certiorari denied, 441 U.S. 935, 99 S.Ct. 2058, 60 L.Ed.2d 664, to support his argument. *Cyrus* at page 474 states that "[a] defendant in a criminal case is, of course, entitled to have the jury instructed on any theory of the defense which has some foundation in the evidence, 'even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" *Id.* at 474 (quoting *United States v. Hillsman,* 522 F.2d 454 (7th Cir. 1975), certiorari denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410). Both *Cyrus* and *Hillsman* present the same constitutional question that the petitioner urges this Court to examine on habeas review. In fact, Whipple bases his federal habeas claim on *United States ex rel. Peery v. Sielaff,* 615 F.2d 402 (7th Cir.1979), certiorari denied, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980), a case which also quotes and follows *Hillsman.* Whipple's habeas claim is essentially the same as his

---

**2.** A habeas petitioner is exempted from the general rule of procedural default if he can demonstrate cause and prejudice, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or in rare cases, if he can demonstrate that failure to consider his federal claim will result in a fundamental miscarriage of justice. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

state court claim. Compare *Sielaff*, 615 F.2d at 402, with *Cyrus*, 381 N.E.2d at 474.

Although Whipple did not explicitly advise the Indiana Supreme Court that his claim involved a constitutional question, his reliance on the line of cases including *Cyrus* and *Hillsman* adequately notified that court that a constitutional question was involved. It would indeed be ironic if we were to penalize Whipple for failing to state the constitutional underpinning of his entitlement when this Court's own opinion in *Hillsman* fails to note that a defendant's entitlement to present his defense theory to the jury stems from constitutional guarantees. See also *Mathews v. United States*, 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (holding that a defendant is "entitled to" an instruction on a defense for which he has sufficient evidence, but not identifying the source of the defendant's entitlement). Therefore, Whipple avoids procedural default and has fairly presented the substance of his constitutional claim to the state court.[3]

With regard to Whipple's factual claim that he experienced daily pain, the State's assertion that the claim was not fairly presented to the Indiana Supreme Court is devoid of merit. Whipple's claim is not a "new factual allegation," as alleged by the State of Indiana. Whipple first made that claim during his trial in state court.[4] Similar factual arguments were presented to the Indiana Supreme Court.[5] Although the State attempts to bolster its argument by invoking *Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665 (7th Cir. 1990), nothing in that case supports plaintiff's novel theory that a defendant must restate every factual detail to the state Supreme Court in order to rely on that evidence on collateral review. Therefore, when examining Whipple's constitutional claim, this Court considers Whipple's factual allegation that he experienced extreme pain on a daily basis.

Thus we agree with the district court that "the issues here presented were fairly presented to the highest court in Indiana" (Mem. and Order, at 6 (Nov. 29, 1990)).

*B. Constitutionality of Denying Whipple's Request to Instruct Jury on Defense of Self–Defense and Defense of Others*

■ Under Indiana law, in order to assert the defense of self-defense or the defense of another, a defendant must show that he reasonably feared the imminent use of unlawful force against himself or a third person.[6] On appeal, Whipple strenuously

---

3. Since the Indiana Supreme Court had a fair opportunity to correct alleged constitutional errors, the exhaustion requirement does not bar this Court from evaluating Whipple's constitutional claim. *United States* ex rel. *Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990) (stating that "claims are exhausted when they have been presented to the highest state court for a ruling on the merits"); *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir.1985) (holding that exhaustion requirement is met when the highest state court "had a fair opportunity to consider the constitutional issue"). See also *United States* ex rel. *Sullivan v. Fairman*, 731 F.2d 450, 453 n. 4 (7th Cir.1984) (noting that the analysis of whether constitutional claims were fairly presented to the state court is equally applicable in exhaustion and waiver cases).

4. The trial court testimony offered by Dale Whipple on redirect examination reads as follows:

Q: "In some fashion or other, with the board or with slaps or with fists or with feet, in December, 1984, did you experience extreme pain at least every day in that month?"
A: "Yes."

Record of Proceedings at 1255.

5. In his reply brief to the Indiana Supreme Court, the defendant claimed "[Mr. Whipple's] vicious attacks on Dale became at least daily occurrences. (R.P. 1255)" (Def.Rep.Br., Ind. Sup.Ct. 6).

6. Indiana Code § 35–41–3–2 provides in relevant part "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary."

Indiana Code § 35–41–1–25 further provides " 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or pro-

argues that the Indiana Supreme Court misreads Indiana's self-defense statute by reading the term imminent to mean immediate. However compelling, Whipple's argument is misdirected. It is basic hornbook law that federal courts are courts of limited jurisdiction. Chemerinsky, *Federal Jurisdiction* 217 (1989). In exercising jurisdiction under 28 U.S.C. § 2253, this Court has no authority to tell the Indiana Supreme Court how to construe Indiana statutes. See *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir.1981). Interpretation of the word imminent, as immediate or otherwise, is a matter of state law that must be decided by state courts and legislatures. See *Griffin v. Wisconsin*, 483 U.S. 868, 875, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 ("Whether or not we would choose to interpret a similarly worded federal regulation in that fashion, we are bound by the state court's interpretation, which is relevant to our constitutional analysis only insofar as it fixes the meaning of the regulation.").

The scope of self-defense statutes has been the subject of much thoughtful scholarship[7] that has led many states to reexamine their self-defense laws in light of cases of recurring domestic violence.[8] But regardless of the merits of a particular construction of the word imminent in self-defense statutes, ultimately the meaning of that word is an issue upon which state courts can and do differ.[9] Divergent state court interpretations of identical state self-defense statutes comport with general principles of federalism. On federal habeas corpus review this Court does not reinterpret Indiana law, but instead seeks to determine whether the petitioner has been convicted in violation of his constitutional rights. See 28 U.S.C. § 2254; *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

■ Whipple contends that the trial court judge's failure to instruct the jury on the issue of self-defense and the defense of

tracted loss or impairment of the function of a bodily member or organ."

7. Many authorities advocate modification of the law of self-defense based on the realities of domestic violence. See, *e.g.,* Willoughby, *Rendering Each Woman Her Due: Can a Battered Woman Claim Self-Defense When She Kills Her Sleeping Batterer?*, 38 U.Kan.L.Rev. 169 (1989); Kinports, *Defending Battered Women's Self-Defense Claims*, 67 Or.L.Rev. 393 (1988); Crocker, *The Meaning of Equality for Battered Women Who Kill Men in Self-Defense*, 8 Harv.Women's L.J. 121 (1985); Eber, *The Battered Wife's Dilemma: To Kill or to be Killed*, 32 Hastings L.J. 895 (1981); Schneider, *Equal Rights to Trial for Women: Sex Bias in the Law of Self-Defense*, 15 Harv.C.R.–C.L. 623 (1980); Walker, *The Battered Woman* (1979). For a more extensive list of scholarship, see Schneider, *Describing and Changing: Women's Self-Defense Work and the Problem of Expert Testimony on Battering*, 9 Women's Rts.L.Rep. 195 (1986).

8. See, *e.g.,* State v. Koss, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990); *State v. Kelly*, 97 N.J. 178, 478 A.2d 364 (1984); *State v. Anaya*, 438 A.2d 892 (Me.1981).

9. *People v. Yaklich*, 1991 WL 242913 (Colo.App. 1991), examines the split of authority between those jurisdictions which define imminent as immediate and refuse to permit self-defense instructions where a *victim of domestic violence kills his or her abuser during a pause in the violence such as sleep,* and those jurisdictions which construe *imminent as encompassing a* broader time frame and require the admission of instructions regarding self-defense in that category of cases. Compare *People v. Aris,* 215 Cal.App.3d 1178, 264 Cal.Rptr. 167 (1989) (battered woman did not face immediate peril when she shot sleeping husband and therefore self-defense instruction was not justified); *State v. Norman,* 324 N.C. 253, 378 S.E.2d 8 (1989) (self-defense instruction rejected because woman was not faced with instantaneous choice of killing or being killed when she shot her sleeping husband); *State v. Stewart,* 243 Kan. 639, 763 P.2d 572 (1988) (self-defense instruction inappropriate because no confrontational circumstance at the time that woman killed her sleeping husband); *with State v. Gallegos,* 104 N.M. 247, 719 P.2d 1268 (1986) (woman who shot and stabbed husband while he was lying in bed entitled to instruction on self-defense); *State v. Allery,* 101 Wash.2d 591, 682 P.2d 312 (1984) (en banc) (self-defense instruction proper when battered wife shot husband who was lying on couch even though no violent act immediately preceded shooting); *State v. Leidholm,* 334 N.W.2d 811 (N.D.1983) (self-defense statute requires imminent not immediate threat so that self-defense instruction required where battered woman stabbed sleeping husband). See also *State v. Hundley,* 236 Kan. 461, 693 P.2d 475, 478 (1985) (finding reversible error when trial court instructed that self-defense is only justified where defendant shows "immediate" threat, since "the time limitations in the use of the word 'immediate' are much stricter than those in the use of the word 'imminent' ").

his sister deprived him of his constitutional right to present his defense theory to the jury. Whipple asserts that his entitlement to present his defense to the jury stems from constitutional guarantees, in particular, the right of due process of law guaranteed by the Fifth and Fourteenth Amendments, as well as the right to trial by jury secured by the Sixth Amendment.

This Court has firmly established that under the Fifth and Sixth Amendments "a criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, 'even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 403 (7th Cir.1979) (quoting *United States v. Hillsman*, 522 F.2d 454, 459 (7th Cir.1975)), certiorari denied, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794. Similarly, the Supreme Court has held that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (citing *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896)).

A defendant's right to submit a defense for which he has an evidentiary foundation is fundamental to a fair trial, and has been considered protected under both the Fifth and Sixth Amendments. The Sixth Amendment, which assures the defendant of a right to trial by jury, is violated where the trial judge directs a verdict on an issue against the defendant. "[I]f the trial judge evaluates or screens the evidence supporting a proposed defense and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration." *Sielaff*, 615 F.2d at 403–404 (quoting *Strauss v. United States*, 376 F.2d 416, 419 (5th Cir.1967)). Moreover, a Fifth Amendment violation occurs when the instructions provided do not "accurately [reflect] the law as it appeared at the time of the alleged criminal conduct."

*United States ex rel. Reed v. Lane*, 759 F.2d 618, 623 (7th Cir.1985), certiorari denied, 475 U.S. 1054, 106 S.Ct. 1282, 89 L.Ed.2d 589.

Consequently, a defendant is entitled to have a jury consider any defense theory that is supported by law and has some foundation in the evidence. *United States v. Briscoe*, 896 F.2d 1476 (7th Cir.1990), certiorari denied sub nom. *Usman v. United States*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137. In Whipple's case, where Indiana law interpreted imminent in a manner similar to the common interpretation of immediate and Whipple offered no evidence that he feared an immediate threat, Whipple did not have a constitutional right to present his defense to the jury.

Whipple's claim of an alleged constitutional deprivation is exclusively based on "[t]he attempt by the trial court and the Indiana Supreme Court to equate 'imminent' with 'immediate'" (Br. 30). As previously discussed, interpretation of Indiana's self-defense statute is a matter of state law. Had the Indiana Supreme Court interpreted its statute in a novel or unnatural fashion, the defendant could argue that he did not have adequate notice that his conduct was prohibited. *Griffin v. Wisconsin*, 483 U.S. 868, 875 n. 3, 107 S.Ct. 3164, 3169 n. 3, 97 L.Ed.2d 709. But in this case the Indiana Supreme Court's understanding of the term imminent as akin to immediate is neither new nor unforeseeable. The Indiana courts have reached similar holdings in earlier cases. See, *e.g., French v. State*, 273 Ind. 251, 254, 403 N.E.2d 821, 824 (1980) ("Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and investigate"); *Southard v. State*, 422 N.E.2d 325, 331 (Ind.App. 1st Dist.1981) (holding that where the assailant did not have the immediate ability to carry out his threats defendant had not shown evidence that he reasonably perceived imminent danger).

Whipple does not maintain, nor does he offer any evidence to support, what he must show under Indiana law—that he reasonably believed that his mother and father

posed a present threat to himself or his sister at the time of the killings.[10] Had Whipple presented such evidence, however weak, he would have been entitled to present his defense to the jury.

### III.

Given Indiana's substantive definition of its law of self-defense, Whipple did not present any evidence from which an objectively reasonable juror could have found that he acted in self-defense. Therefore, the trial judge's failure to permit an instruction on self-defense did not violate Whipple's constitutional rights.

The judgment of the district court is affirmed.

---

**10.** Whipple did offer evidence that he faced a threat of serious bodily injury. According to the Indiana self-defense statute, "serious bodily injury" includes injury that causes "extreme pain." Whipple has claimed that as a result of his father's abuse he experienced extreme pain on a daily basis. However, Whipple did not offer any evidence that at the time he killed his parents he believed the threat of serious bodily injury to himself or his sister was imminent within Indiana's narrow temporal understanding of that term so that his defense properly failed under Indiana law.