Michael G. TYSON, Petitioner,

v.

**Clarence TRIGG, Attorney General of Indiana, Respondents.**

**No. IP 94–591 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 6, 1994.

Alan Dershowitz, Cambridge, MA, Nathan Z. Dershowitz, New York City, James H. Voyles, Indianapolis, IN, for plaintiff.

Matthew Gutwein and Arend Abel, Office of the Atty. Gen., Indianapolis, IN, for defendant.

## ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF JUDGMENT

BARKER, Chief Judge.

This cause is before the court on the petition of Michael G. Tyson for a writ of habeas corpus, on the respondents' return to order to show cause and on the petitioner's reply. The court also has before it the expanded record of the petitioner's trial in the Marion County Superior Court, Criminal Division, and the parties' materials submitted in response to paragraph 3 of the Order of June 30, 1994.

Whereupon the court, having read and examined such petition, return, reply and record, and having also considered the parties' arguments relative to the claims asserted herein, now makes the following findings and determinations.

### INTRODUCTION

**Procedural Background**

Tyson was indicted in Marion County on September 9, 1991. He was charged with two counts of criminal deviate conduct and one count each of rape and confinement.

A jury trial was conducted between January 27, 1992 and February 10, 1992. The confinement charge was dismissed during trial. The jury returned a verdict of guilty to rape, a violation of Ind.Code 35–42–4–1(1) (1992 Supp.), and to each of the counts of criminal deviate conduct, a violation of Ind. Code 35–42–4–2(1) (1988). Tyson was sentenced on March 26, 1992 to ten (10) years, with four (4) years of that sentence being suspended.

Tyson's conviction was affirmed on appeal in *Tyson v. State*, 619 N.E.2d 276 (Ind.App. 1993), *cert. denied*, — U.S. —, 114 S.Ct. 1216, 127 L.Ed.2d 562 (1994). Post-conviction actions were filed (and apparently remain pending) but the issues raised therein are not pertinent to the present petition or its disposition.[1]

---

1. Tyson's state remedies have been exhausted with respect to the claims presented in this case. The respondents' characterization of this as piecemeal litigation of his claims is apparently based on the fact that other claims are still unresolved in post-conviction actions pending in the trial court. While Tyson has bifurcated his claims in this way—a strategy which could prevent him from receiving *habeas* review of the still-unresolved post-conviction actions—he is

## The Evidence

Tyson does not challenge the sufficiency of the evidence in this case. The court is entitled to proceed, therefore, viewing the evidence that is most favorable to the State of Indiana. *Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir.1987) (a federal habeas court must assume that the jury resolved all evidentiary conflicts and found all reasonable inferences in the state's favor).

The expanded record in this action fairly supports the following summary of the evidence. Tyson and the victim, Desiree Washington, met briefly on the morning of July 18, 1991, while both were in Indianapolis for Black Expo. At around 1:30 a.m. the next morning, July 19, Tyson telephoned the victim from his limousine and invited her to go around Indianapolis with him. The victim initially refused, explaining that it was too late and that she was already in bed. But in response to Tyson's persistence and assurances that he only wanted to talk and that it would be her only opportunity to see him because he was leaving Indianapolis in the morning, Washington agreed. Washington asked her roommate, Pasha Oliver, to accompany her, but Oliver declined. Washington got dressed and grabbed her camera, intending to take photographs of Tyson—to give to her father—as well as the places she and Tyson might go. She then joined him in the limousine.

Tyson's limousine proceeded directly to the hotel where he was staying. Tyson told Washington that he needed to retrieve something from his room, so Washington accompanied him there. Tyson and Washington talked in the room for about fifteen minutes.

When the conversation turned from pleasantries to a sexual comment by Tyson, Washington became nervous and went to the restroom. Upon exiting, Washington saw Tyson sitting on his bed, dressed only in his underwear. The bedspread had been drawn back. She announced that it was time for her to leave. He instructed her to come toward him, grabbed her, told her to not fight, pulled her toward him, stuck his tongue in her

mouth and repeated the admonition not to fight him. She resisted, but to no avail. He placed her on the bed, removed her outer jacket and then the rest of her clothing. She was restrained by his arms while these events were taking place. She continued to object verbally to what was happening but Tyson responded with instructions not to fight him. He placed his fingers in her vagina and she pleaded with him to stop. He laughed, lifted her up and licked her genital area. He took out his penis and inserted it in her vagina. She became even more upset, stating that she did not want to become pregnant, and started crying. She agreed to be "on top," thinking she could get away. When she tried, however, he repeated his instructions not to fight him and rolled over on top of her. He continued the intercourse but removed his penis before ejaculating.

Washington gathered up her clothes, put them on and hastened out the door, down to the lobby and out to the limousine. The driver agreed to drive her to her hotel, where she went to her room, informed her roommates of what had occurred, showered and went to bed. The next day (July 19th) she continued her participation in the beauty pageant activities as a contestant. After her parents arrived from out of town later that evening, she notified the authorities. A medical examination disclosed two (2) abrasions near the opening of Washington's vagina which were consistent with an injury from non-consensual intercourse.

### The Claims

The four claims presented here mirror those raised in Tyson's direct appeal. They focus on the manner in which the assignment of the trial judge to the case occurred, the exclusion of certain evidence, the application of Indiana's Rape Shield Statute and the trial judge's denial of a requested instruction relating to a supposed theory of defense.

### Statutory Basis for Relief

"The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence." *Brecht v.*

clearly entitled to proceed at this point as to claims which have been fully exhausted in the state courts.

*Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993). Tyson is entitled to relief in this action only if he demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

There is a plethora of special procedural rules which surround the limited nature of the review in collateral challenges to state convictions. Justice O'Connor identified these:

> [H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court. The petitioner must, in general, exhaust available state remedies, § 2254(b), avoid procedural default, *Coleman v. Thompson,* 501 U.S. [722], 111 S.Ct. 2546 [115 L.Ed.2d 640] (1991), not abuse the writ, *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454 [113 L.Ed.2d 517] (1991), and not seek retroactive application of a new rule of law, *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060 [103 L.Ed.2d 334] (1989).

*Keeney v. Tamayo–Reyes,* 504 U.S. 1, 13–14, 112 S.Ct. 1715, 1722, 118 L.Ed.2d 318 (1992) (O'Connor, J., dissenting). There is little doubt that these hurdles, whether of legislative or judicial origin, are premised on the fact that

> the Great Writ imposes special costs on our federal system. The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.

*Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

### ANALYSIS

### 1. Judge Selection Procedure

■ Tyson's first claim is that he is entitled to relief because he was denied "a fair trial before an impartial judge ... [due to] the prosecutor's selection of the trial judge to preside over his case."

At the time Tyson was charged, existing procedures permitted the Marion County Prosecutor to select which of several judges would be assigned to a case. This was done by filing a motion to impanel a grand jury with a particular judge. If an indictment was returned, that judge would then be assigned to the case. Since the time of this trial, this procedure has been held to be improper and has been changed. *Tyson,* 619 N.E.2d at 300.

The key to making a proper assessment of this claim is an understanding of the limited role of § 2254(a). Specifically, states are constitutionally free to adopt virtually any sort of procedures for the assignment of cases so long as what they adopt does not result in the selection of a biased judge. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Del Vecchio v. Illinois Department of Corrections,* 31 F.3d 1363 (7th Cir.1994) (en banc).

A judge is, by law, presumed to be impartial, *United States v. Baskes,* 687 F.2d 165, 170 (7th Cir.1981), a presumption as effective in state courts as it is in federal courts. *Del Vecchio.* Tyson's claimed due process violation on this basis, therefore, does not withstand scrutiny. Tyson has not attempted to establish that the assigned trial judge was anything *other* than impartial. In fact, he holds to the contrary. Tyson's counsel stated in open court on November 27, 1991, after a hearing on the issue of the judicial selection process:

> Your Honor, I'd like to address very briefly the brief record that we've just established and note for the Court that we certainly have no basis to suggest that Your Honor harbors any kind of bias in this case.

Thereafter, defense counsel acknowledged that he did not know what motivated the prosecutor's decision to have the grand jury impaneled under Judge Gifford's supervision and did not intend to "suggest ill motives." Tyson also maintains, on page 4 of his Response to Respondents' Proposed Findings of Fact and Conclusions of Law, that he "did not attempt to demonstrate the kind of bias or prejudice that would operate to disqualify

a judge regardless of how he or she was chosen." These concessions contradict Tyson's Proposed Findings of Fact No. 128 and No. 129, which specifically assert that the prosecutor selected Criminal Division Four of the Marion County Superior Court precisely *because* it was presided over by Judge Gifford. The petitioner has also implied in other arguments to the court that Judge Gifford's "discretionary rulings," in the aggregate, unfairly tipped the balance against him.

The foregoing establishes that, despite his vacillations concerning actual bias, Tyson's due process argument rests on a claimed *appearance* of an improper judge selection process. As *Del Vecchio* demonstrates, however, the mere appearance of impartiality does not constitute a due process violation:

> Reality controls over uninformed perception. Del Vecchio [like Tyson here] cites no case in which the Supreme Court has overturned a verdict on due process grounds based on a mere appearance of bias. Our court was correct in holding that "a litigant is not denied due process by either the 'appearance' of partiality or by circumstances which might lead one to speculate as to a judge's impartiality." *Margoles v. Johns,* 660 F.2d 291, 296 (7th Cir.1981). When the Supreme Court talks about the "appearance of justice," it is not saying that bad appearances alone require disqualification; rather, it is saying that when a judge is faced with circumstances that present "some [actual] incentive to find one way or the other" or "a real possibility of bias," a court need not examine whether the judge actually was biased. *Id.* at 297 (quoting *Howell v. Jones,* 516 F.2d 53, 57–58 (5th Cir.1975)); *Bradshaw [v. McCotter,* 796 F.2d 100, 102 (5th Cir. 1986) ] (Gee, J., concurring). Absent the incentive for bias, however, disqualification is not required despite bad appearance.

*Del Vecchio,* 31 F.3d at 1372.

A further comment is warranted: it is, of course, a dubious leap of logic, first to impugn the prosecutor's motives in having the case assigned to Judge Gifford and then to impute those base motives or that bias to Judge Gifford. The weakness of this argument is underscored by Tyson's failure throughout the proceedings to argue or establish that Judge Gifford possessed any such bias against him.

The more apt criticism of the judge selection procedure, therefore, seems to emanate from the possibility of the *prosecutor's* conduct in engineering the selection of Criminal Division Four. But the prosecutor's action in this regard does not warrant *habeas* relief unless it resulted in particularized prejudice whereby the selection of a forum deprived the petitioner of a fair trial, and that has not been established in any fashion.

The decision of the Indiana Court of Appeals that the selection process was improper is, of course, not controlling in establishing a *constitutional* violation. Again, reference to *Del Vecchio* is instructive:

> Our habeas corpus jurisdiction ... "is limited to questions of federal and constitutional custody. In other words, 'federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.' " *Haas v. Abrahamson,* 910 F.2d 384, 389 (7th Cir.1990), quoting *Lee v. Flannigan,* 884 F.2d 945, 952 (7th Cir.1989).

*Id.* at 1370. Absent a showing of a due process violation, a change in procedures as directed in *Tyson* is purely a matter of reforming state practice. Constitutional interests are not implicated by such changes.

### 2. Exclusion of Defense Witnesses

■ The trial court had ordered the parties to disclose to each other by December 18, 1991 the identities of witnesses whom each side reasonably anticipated would testify. The order further provided that "if the defense, after complying with the order to produce, finds either before or during trial additional information or facts which are subject to or covered by such order, defense counsel shall promptly notify the Court and the Prosecution of the existence thereof."

After the State had begun its presentation of evidence, a lawyer associated with Tyson's Indianapolis attorney learned of the possibility of two (2) previously undisclosed witnesses who might have information relevant to the

issue of whether Washington consented to sexual intercourse with Tyson. Tyson was thus under a duty to notify promptly the State's attorneys of their existence. On Monday, February 3, 1992, Tyson filed the motion with the court in which leave was sought to call three (3) additional witnesses (Martin, Lawrence and Neal). The court denied the motion on February 4, 1992, finding that Tyson had failed to comply with the standing discovery order requiring prompt notification to the State. The court also found that the delayed disclosure of these witnesses would result in prejudice to the State and could substantially disrupt the trial and that delays were particularly onerous to the sequestered jury.

Tyson claimed on appeal that it was error for the trial court to exclude these witnesses. The majority in *Tyson* concluded that, while defendant's violation of the discovery rule was "not blatant and deliberate misconduct or bad faith," the trial judge had not abused her discretion in ruling as she did. *Tyson,* 619 N.E.2d at 284.

Tyson maintains that he was denied the right to present a defense through the imposition of this sanction. The parties dispute both the facts of what occurred in relation to the discovery and the disclosure of the three new witnesses and how pertinent constitutional principles should be applied to those facts.

■ Issues relating to the admissibility of evidence in a state criminal trial are generally resolved under state law. *See Gross v. Greer,* 773 F.2d 116, 119 (7th Cir.1985); *United States ex rel. Searcy v. Greer,* 768 F.2d 906, 910 (7th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 363 (1985). Therefore, a federal court issues a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights through the denial of a fundamentally fair trial or violates some other specific constitutional protection. *See Woodruff v. Lane,* 818 F.2d 1369, 1373 (7th Cir.1987); *Cramer v. Fahner,* 683 F.2d 1376, 1385 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982).

Tyson asserts that his inability to call these witnesses to testify denied him his Sixth Amendment right to present a defense. While the "exclusion of significant defense evidence implicates constitutional values," *Perry v. Rushen,* 713 F.2d 1447, 1452–53 (9th Cir.1983), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), a "defendant [asserting such a claim] must show that his interest clearly outweighs the state's before [this court] will interfere with routine procedural matters." *Perry,* 713 F.2d at 1453. "Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process." *Id.* at 1453. *See also Taylor v. Illinois,* 484 U.S. 400, 411, 108 S.Ct. 646, 654, 98 L.Ed.2d 798 (1987) ("The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.").

Tyson's offer of proof with respect to the testimony from would-be witnesses Martin, Lawrence and Neal is set forth in detail in the majority's opinion. *Tyson,* 619 N.E.2d at 284 n. 9. Tyson is correct in his contention that the decision to exclude this evidence raises a mixed question of law and fact and that no deference is due the state courts' conclusions on this matter. He is incorrect, however, in his contention that the excluded evidence impinged on his right to a fair trial. The excluded evidence would have been comparable, in terms of relevance, to much of the other evidence which was admitted. It is clear to this judge that it would not have added or subtracted one whit from the evidence of what actually took place in Tyson's hotel room. It might have constituted additional impeachment evidence (of which there already was plenty) as to Washington's credibility. However, the exclusion of evidence of marginal relevance to the pivotal issue is not a disproportionately severe sanction and did

not deprive Tyson of his right or opportunity to present a defense.[2]

 Even if this ruling by the trial court were error of constitutional magnitude, not every constitutional error necessarily requires reversal of a conviction. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Constitution entitles a criminal defendant to a fair trial, not a perfect one. *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) ("there can be no such thing as an error-free, perfect trial, and ... the Constitution does not guarantee such a trial.... Since *Chapman [v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ], the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations."). Tyson's claim is presented in the context of a petition for writ of habeas corpus and involves so-called trial error rather than structural error.[3] In this context, if there were error in the exclusion of evidence from the newly-discovered witnesses, that error will be found harmless unless it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253,

90 L.Ed. 1557 (1946)). Under this standard, a showing that there is a reasonable probability that the error contributed to the jury's verdict is not enough to warrant reversal of Tyson's conviction. Instead, Tyson must establish that the error resulted in "actual prejudice." *Id.,* —— U.S. at ——, 113 S.Ct. at 1722.

By this measure, the discovery sanction imposed in this case was, at most, harmless error. In light of the record as a whole, the information which Martin, Lawrence and Neal could have provided was of marginal import. The information would not have dealt directly with Washington's consent (or Tyson's "reasonable belief" with regard to Washington's consent or lack thereof) at the only time when consent mattered. Tyson's trial transcript is lengthy, and the absence of the excluded information, given its questionable reliability and relevance, did not prejudice the jury's verdict. The credibility contest between Tyson and Washington concerned their respective versions of what occurred in Tyson's hotel room, not of events during the preceding hours or day. The jury credited Washington's version.

In light of the foregoing, the court concludes that the discovery sanction did not "substantially influence" the jury's verdict and hence did not "actual[l]y prejudice" the

---

2. "It is well-settled that a trial 'court has broad authority to control the admission of evidence and the scope of cross-examination ... that will not be disturbed ... unless an abuse of discretion is shown.' " *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987) (quoting *United States v. Rovetuso,* 768 F.2d 809, 815 (7th Cir.1985)). The excluded evidence, construed most favorably to Tyson, could have supported an inference that *at the time Tyson and Washington were observed* their behavior was consistent with Washington's **then-existent** consent to Tyson's advances. The majority in *Tyson* was entirely correct when it explained that "an honest and reasonable belief that a member of the opposite sex will consent to sexual conduct at some point in the future is not a defense to rape or criminal deviate conduct. The only consent that is a defense is the consent that immediately precedes the sexual conduct; it is the defendant's honest and reasonable belief at that point in time, and not at any other point, that is relevant. Therefore, the trial court exercised sound discretion when it determined that the proffered testimony that Tyson and [Washington] were 'hug-

ging and kissing' in the limousine and that they walked into the hotel hand-in-hand or arm-in-arm was not vital. Instead, it is appropriate to classify that evidence, as the trial court did, as 'in the nature of' cumulative evidence, because, as stated above, the record is replete with evidence from which Tyson might have formed an honest and reasonable belief that [Washington] would consent to sexual conduct *at some point in the future.*" *Tyson,* 619 N.E.2d at 286 (emphasis added). The absence of a viable claim of reasonable and honest mistake of fact regarding consent is discussed in greater detail in relation to Tyson's last claim in this petition.

3. As explained by the Supreme Court, constitutional errors that may be characterized as "trial errors" occur during the presentation of the case to the jury and therefore may be quantitatively assessed in the context of the aggregate of the evidence that was presented and may be treated, where appropriate, as harmless. *Arizona v. Fulminante,* 499 U.S. at 307–08, 111 S.Ct. at 1249 (1991) (discussing *Chapman.*)

outcome of the trial. Therefore, the error, if it was indeed error, was harmless.

### 3. Exclusion of Evidence under Rape Shield Statute

■ Prior to his trial, Tyson sought information concerning Washington's prior sexual history. The trial court denied this request. Tyson did not renew his effort to have such evidence introduced during the trial itself. Based on this failure to renew the offer of evidence, the Indiana Court of Appeals concluded that the claimed error in the pre-trial ruling had not been preserved for appellate review. *Tyson,* 619 N.E.2d at 289–90.

The respondents assert that this ruling by the appellate court constitutes a barrier to a review by this court of the merits of Tyson's third claim. "As a general rule, federal district courts may not reach the merits of a habeas petition challenging a state conviction if the 'state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.'" *Barksdale v. Lane,* 957 F.2d 379, 382 (7th Cir.1992) (quoting *Coleman v. Thompson,* 501 U.S. at 730–31, 111 S.Ct. at 2554).

Tyson resists the effect of this holding by arguing that the exclusionary rule applied by the trial court and the Court of Appeals was a new rule of law; hence, he should not be held accountable for his failure to follow it. He is correct that

> a defendant's failure to comply with a state procedural rule provides an adequate basis for barring habeas relief only if "the state court acts in a consistent and principled way. A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted."

*Bobo v. Kolb,* 969 F.2d 391, 399 (7th Cir.1992) quoting *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383 (7th Cir.1990).

The rule which the majority in *Tyson* applied, however, is clearly and securely within the purview of appropriate state procedural

rulemaking. Adequacy, as the term is used above, only requires application of the rule evenhandedly to all "similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 *reh'g denied,* 458 U.S. 1131, 103 S.Ct. 15, 73 L.Ed.2d 1401 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."). The requirement that pre-trial evidentiary rulings be renewed at trial in order to be preserved on appeal is well-established in Indiana law. *E.g., Wright v. State,* 593 N.E.2d 1192, 1194 (Ind.1992); *Morgan v. State,* 427 N.E.2d 1131 (Ind.1981); *Carter v. State,* 634 N.E.2d 830 (Ind.App. 1994); *Berry v. State,* 574 N.E.2d 960 (Ind. App.1991). Although defendants typically seek the exclusion, rather than the introduction of evidence (based on an unsuccessful bid for pre-trial suppression), the rule is not limited only to exclusions of evidence. *See Krempl v. State,* 186 Ind. 677, 117 N.E. 929 (1917) (alleged error in sustaining objections to defendant's questions at trial not preserved absent offer to prove). The Indiana Court of Appeals has specifically applied this rule to evidence excluded under the Indiana Rape Shield Statute in *Trevino v. State,* 428 N.E.2d 263 (Ind.App.1981), decided a decade before Tyson's trial.

Tyson's procedural default is thus a barrier to further review. The fact that the Indiana Court of Appeals nonetheless proceeded to the merits of the claim is not controlling, for a plain statement of waiver on state grounds and a decision to reach federal claims only in the alternative still acts as a bar to federal review of the merits. *Rose v. Lane,* 910 F.2d 400, 402 (7th Cir.), *cert. denied,* 498 U.S. 983, 111 S.Ct. 515, 112 L.Ed.2d 526 (1990). The rationale for this rule is that federal review would be superfluous if an independent basis exists under state law. *Coleman,* 501 U.S. at 725–31, 111 S.Ct. at 2552–54.

"A habeas petitioner can overcome a procedural default by showing either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of jus-

tice." *Mills v. Jordan,* 979 F.2d 1273, 1277 (7th Cir.1992). Tyson's effort is wholly directed at avoiding application of the rule to his case; he does not attempt to establish cause and/or prejudice for the default or establish that he suffered a fundamental miscarriage of justice because of this evidentiary ruling. Accordingly, petitioner's third claim is not open to further review in this forum.

**4. Denial of Tendered Jury Instructions**

■ Indiana law recognizes as a defense "that an honest and reasonable mistake concerning a fact excuses criminal conduct which would not be criminal if the fact had been as the defendant reasonably believed." *Tyson,* 619 N.E.2d at 294 (citing cases). The final claim which Tyson presents is that the trial court violated his right to due process when it refused to give his tendered instructions 5 and 6. These two instructions would have informed the jury of the defense of mistake of fact as it applied to the issue of consent.

*Whipple v. Duckworth,* 957 F.2d 418 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 218, 121 L.Ed.2d 157 (1992), surveyed the constitutional bases of a defendant's right to have an instruction given on his theory of defense. The Court concluded that "a defendant is entitled to have a jury consider any defense theory that is supported by law and has some foundation in the evidence." *Id.,* 957 F.2d at 422.

Indiana is, of course, entitled to determine its own law and to interpret that law. *Barger v. State of Indiana,* 991 F.2d 394, 396 (7th Cir.1993) ("State courts are the final arbiters of state law.... Federal courts do not reexamine state court determinations of state law questions."); *Whipple,* 957 F.2d at 422 ("On federal habeas corpus review this Court does not reinterpret Indiana law, but instead seeks to determine whether the petitioner has been convicted in violation of his constitutional rights.").

■ Indiana law permits (and hence we will assume in this context that it also requires) the giving of a mistake of fact defense instruction where the following three elements have been satisfied: (1) the mistake must be honest and reasonable; (2) the mistake is about a matter of fact; and (3) the

mistake serves to negate culpability. *Smith v. State,* 477 N.E.2d 857, 863 (Ind.1985) (citing *Stoner v. State,* 442 N.E.2d 983 (Ind. 1982)).

The majority in *Tyson* determined that the trial testimony did not support the giving of an honest and reasonable mistake of fact instruction under state law. This determination was based on the following assessment of the evidence:

Tyson's description is a plain assertion of actual consent. From this testimony, a reasonable jury could infer only that [Washington] actually consented to sexual intercourse. There is no recitation of equivocal conduct by [Washington] which reasonably could have led Tyson to believe that [Washington] only appeared to consent to the charged sexual conduct; no gray area exists from which Tyson can logically argue that he misunderstood [Washington's] actions. According to Tyson, he exerted no force and [Washington] offered no resistance; instead, she was an active and equal participant in the conduct.

*Tyson,* 619 N.E.2d at 295. This summary of the evidence, which Tyson does not challenge, is fairly supported by the record and is entitled to a presumption of correctness under 28 U.S.C. § 2254(a). *Johnson v. Trigg,* 28 F.3d 639 (7th Cir.1994).

The analysis of the *Tyson* majority from these facts was ineluctable:

Evidence that the alleged victim consented to the sexual act is evidence that negates compulsion, while evidence that the alleged victim did not consent may be evidence that the victim was compelled. Arguably, then, in order to raise the defense of mistake of fact in a rape or criminal deviate conduct case, there must be evidence that suggests the defendant was reasonably mistaken as to whether a sexual act occurred or whether force or threatened force was used, the prohibited conduct components of the offenses. Evidence that the sexual act or force or threat of force did not occur cannot raise a mistake of fact "defense" because that evidence denies the prohibited conduct, and there cannot have been a mistake about conduct which did not occur.

The pivotal issue at Tyson's trial was the credibility of the two individuals present in Tyson's hotel room—Tyson himself and Washington. There is no logical manner in which to view or construe their testimony (or the other evidence) and conclude that there could have been an honest and reasonable mistake concerning Washington's consent. The evidence thus did not support the conditions necessary to give an instruction to that effect under Indiana law and the trial court's refusal to do so did not violate Tyson's constitutional right to a fair trial.

### Conclusion

This court has carefully and completely reviewed the state record in light of the petitioner's claims. It has given the appropriate consideration to the claims raised as is consistent with the limited scope of its review in a habeas corpus proceeding. The court finds no violation of the petitioner's rights warranting the relief which he seeks. Accordingly, the petition for a writ of habeas corpus must be denied, and this cause of action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**