82 F.3d 420
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daniel A. JOHNSON, Petitioner-Appellant,
v.
Charles MILLER, Respondent-Appellee.
 No. 95-2485.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 29, 1996.*
Decided April 9, 1996.
 
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Johnson appeals from the district court's denial of his petition for habeas corpus, 28 U.S.C. § 2254. The district court made findings regarding six broad issues. First, the district court concluded that Johnson had procedurally defaulted his claim that the master commissioner who imposed sentence was not authorized to do so and that Johnson could not establish cause and prejudice to excuse this procedural default. Moreover, the court held that this claim was founded only upon state law and, therefore, it was not cognizable under § 2254. Second, the district court held that Johnson did not have a valid claim of ineffective assistance of counsel. Third, the district court held that Johnson's claim that part of the instructions tendered to the jury was incorrect was not grounds for granting his petition for habeas corpus, because even if the instruction was erroneous it did not result in a due process violation. Fourth, the district court held that Johnson did not raise a federal constitutional claim in the Indiana courts when he argued the trial judge erred in not allowing the jury to see a copy of Johnson's confession, and in making this decision in Johnson's absence. Therefore, Johnson was barred from raising these claims in his petition for habeas corpus. Fifth, the district court concluded that Johnson was not entitled to relief on his claim that there was insufficient evidence to support the jury's determination that he was a habitual offender. Sixth, the court held that Johnson had not carried his burden of persuasion on his claim that his confession was not voluntary. We examine each of these issues in turn.
 
 
 2
 We hold that Johnson procedurally defaulted upon his claim that the master commissioner lacked authority to sentence him. Further, he has not shown prejudice from this default. Thus, the district court was correct in its finding that Johnson had waived this issue for purposes of his habeas corpus petition.
 
 
 3
 Johnson did not raise his claim regarding the commissioner's lack of authority to sentence him in his direct appeal to the Indiana Court of Appeals (Johnson I). Johnson does not dispute this. The Indiana Court of Appeals, in Johnson's collateral proceedings, held that it would not rule upon the merits of this claim because Johnson had failed to raise it on direct appeal. Johnson argues, however, that he should not be deemed to have waived this issue because he did not "intentionally relinquish or abandon any of his known rights...." In addition, he claims that he can raise this issue in his petition for habeas corpus, notwithstanding the fact that the Indiana Court of Appeals ruled in Johnson II that he had abandoned this claim, because in doing so the Johnson II court also reached the merits of this issue.
 
 
 4
 In order to raise a claim in a petition for habeas corpus, a "prisoner [generally] ... must raise his federal claim in state court before proceeding to federal court." Whipple v. Duckworth, 957 F.2d 418, 420 (7th Cir.), cert. denied, 113 S.Ct. 218 (1992). Here, Johnson did not raise his claim that the master commissioner lacked authority to sentence him in his direct appeal to the Indiana Court of Appeals. He did, however, raise it in his petition for collateral review in the Indiana Courts. The Indiana Court of Appeals, in Johnson II, ruled that Johnson's failure to raise the claim in his direct appeal amounted to a waiver. In order to determine whether we must review the merits of this claim, we must ascertain whether the disposition in Johnson II amounted to independent and adequate state grounds. Hogan v. McBride, 74 F.3d 144, 147 (7th Cir.1996).
 
 
 5
 Whether independent state grounds exist is a question of state law. Id. at 146 Under Indiana law, "errors of law that were available to the defendant at the time of direct appeal, but are first raised in a petition for post-conviction relief, are not available in the post conviction action." Lowery v. State, 640 N.E.2d 1031, 1037 (Ind.1994), cert. denied, 116 S.Ct. 525 (1995).
 
 
 6
 Johnson claims that the existence of the special master was concealed during direct appeal. Although not stated in so many words, we construe this as a claim that this error was not available to him at the time he presented his direct appeal. The district court found that the fact that the master commissioner was appointed to preside at the trial and then stayed on to impose Johnson's sentence was not hidden. This is a finding of fact, which we review for clear error. Lord v. Duckworth, 29 F.3d 1216, 1219 (7th Cir.1994). In the present case, Johnson does not indicate how this was concealed from him and his attorney on appeal. Therefore, there are independent state grounds to support the Indiana court's holding on the issue of the master commissioner's authority to sentence Johnson.
 
 
 7
 The procedural default standard not only includes the requirement that there be independent state grounds to support the state court's holding, but also requires that such grounds are adequate. Neither in his petition nor on appeal does Johnson assert that failure to present a claim on direct appeal is not an adequate ground to support the court's decision. Thus, we conclude that there were independent and adequate state grounds to support Johnson II's holding on this issue.
 
 
 8
 Johnson has procedurally defaulted on his claim that he was denied due process when he was sentenced. Therefore, he has waived this argument in this habeas corpus petition unless he can show both cause for and prejudice from this procedural default. In the present case, we need not decide whether Johnson has made an adequate showing of cause for failure to raise his claim on direct appeal. This is because we determine that Johnson has not established prejudice.
 
 
 9
 For Johnson to establish prejudice, he must show that the claimed error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982); Stewart v. Lane, 60 F.3d 296, 303 (7th Cir.1995), petition for cert. filed (Jan. 16, 1996) (No. 95-7444). In the present case, Johnson's claim is that the trial court did not follow Indiana's procedural requirements for a special commissioner to impose sentence. It is questionable whether this even raises a constitutional claim. Moreover, Johnson does not indicate how he was actually prejudiced by the sentencing being performed by a commissioner rather than an elected trial judge. All Johnson claims is that he was denied due process by this procedure and has a right to an elected and experienced judge. He may have such a right under Indiana law. However, Johnson has not made any showing as to how he was harmed by a commissioner's imposing sentence. Therefore, Johnson has failed to show prejudice and thus his procedural default bars us from addressing this issue.
 
 
 10
 Johnson's argument that we must address his claim because the Indiana Court of Appeals (in Johnson II) did so is unavailing. In the collateral state proceeding, the Indiana Court of Appeals did not address the merits of Johnson's claim that the special master lacked authority. The court mentioned that Johnson had failed to show how the proceeding before the commissioner was unfair. However, this comment appears to be directed at Johnson's claim that counsel was ineffective for failing to raise the issue of the sentencing judge. More importantly, the court clearly held that he had procedurally defaulted on his claim. Id. That holding makes the question of whether the state court addressed the merits of Johnson's claim immaterial. If "a state court relies upon both waiver and rejection of claim on the merits--a federal court will respect the alternate [finding that the claim was waived] and will be precluded from reaching the merits of the claim." Harris v. Reed, 822 F.2d 684, 686-87 (7th Cir.1987), rev'd, 109 S.Ct. 1038 (1989) (holding that alternate ground rule is sound, but that it was misapplied in this case because state court did not indicate in plain statement that it was relying on waiver). Only if the state court ignored the procedural default would we address the merits. Id. at 687.
 
 
 11
 Johnson's second claim is that his attorney rendered ineffective assistance by stating in his opening statement that Johnson was outside the burgled premises while his brother went inside. He argues that in doing so, his attorney admitted that Johnson engaged in all the elements of the offense. In his Traverse to Answer filed in the district court, and in his appeal to this court, Johnson makes a flurry of additional allegations regarding his trial counsel's incompetence, including claiming there was a conflict of interest and that trial counsel wanted him to plead guilty and did not pursue the case with vigor when Johnson refused to do so. He did not, however, assert these arguments in either his direct or collateral case in the Indiana state courts. Respondent argues that Johnson's failure to raise these other allegations in state court results in his forfeiture of them in this habeas corpus proceeding.
 
 
 12
 As discussed above, with respect to Johnson's claim that the sentencing judge lacked authority, if a petitioner does not first present a claim to a state court, then he generally is barred from raising it in a petition for habeas corpus. In order to satisfy the presentment requirement, the petitioner must proffer the operative facts as well as the controlling legal principles to the state court. Picard v. Connor, 404 U.S. 270, 277 (1971); Verdin v. O'Leary, 972 F.2d 1467, 1475 (7th Cir.1992). Although Johnson claimed his counsel was ineffective because of his opening statement, Johnson did not present to the Indiana courts all the ways that counsel could have been ineffective. Balfour v. Haws, 892 F.2d 556 (7th Cir.1989). Johnson did not allege cause or prejudice regarding his failure to present the ineffectiveness arguments that he presented for the first time in his petition filed in the district court. Therefore, he has procedurally defaulted on these claims. Thus, we will only consider whether counsel's remarks during the opening statement are grounds for finding that counsel was constitutionally ineffective.
 
 
 13
 In order to prevail upon his claim that counsel was ineffective, Johnson must demonstrate two things. First, he must show that counsel's performance, viewed at the time of the particular action, fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 684 (1984); Sullivan v. Fairman, 819 F.2d 1382, 1388 (7th Cir.1987). Second, he must demonstrate a reasonable probability that had counsel not been deficient in his performance, the jury would have had a reasonable doubt regarding Johnson's guilt. Strickland, 466 U.S. at 695; Harris, 894 F.2d at 879.
 
 
 14
 Here, Johnson has not satisfied either leg of the test. Johnson's attorney's opening statement was a reasonable tactical approach. He basically stated that defendant Johnson was with his brother when their car broke down. He went on to say that the evidence would show that Timothy wanted to get some tools, and that while defendant Johnson was standing by the car, Timothy broke into a service station, and that defendant Johnson, fearing the consequences of his brother's actions, ran. Johnson's attorney also said during his opening statement that the evidence would show that Johnson did not take part in his brother's burglary and did not aid his brother's crime.
 
 
 15
 The prosecution presented the testimony of an investigating officer who saw someone running from the scene, identified that person when he was arrested several hours later as the person he saw running, and pointed out in court that he was certain that this was the defendant Daniel Johnson. In addition, the prosecution presented the testimony of the officer who stopped Daniel Johnson based upon the description of the fleeing suspect. This officer had caught Johnson within a mile and a half of the burglary, and testified that this person was in fact the defendant in the courtroom. Moreover, Johnson made a statement while in custody that he and his brother had discussed the burglary in advance. (One of Johnson's other arguments in this appeal is that the statement should have been suppressed. We reject this claim, as discussed below. Therefore, we consider this evidence when evaluating the present claim.)
 
 
 16
 In that there was strong evidence placing Johnson at the crime scene, his attorney's admission that Johnson was with his brother at the scene of the crime, coupled with the argument that Johnson was merely a bystander, was within the bounds of reasonable trial strategy. As it turned out, this strategy did not result in Johnson's acquittal. This, however, is not sufficient to support an ineffectiveness claim. In reviewing counsel's performance, a court should not second guess tactical decisions, reasonable at the time taken, with 20/20 hindsight. Rather, a court must "judge the reasonableness of counsel's ... conduct on the facts of the particular case, viewed at the time of counsel's conduct." Strickland, 466 U.S. at 690. Here, counsel's decision on how to present this case, including identifying the evidence that clearly would be presented by the prosecution and explaining why that would not necessarily show that Johnson was guilty, was a reasonable strategy.
 
 
 17
 Because Johnson has not shown that his attorney fell below a reasonable level of performance, he cannot prevail on his claim of ineffective assistance of counsel, and we need not address the prejudice prong of the Strickland doctrine. 466 U.S. at 697. Nevertheless, it is clear that Johnson was not prejudiced by his attorney's opening statement. First, the statement did not reveal anything that was not presented by the prosecution's evidence. Second, the judge instructed the jury that the statements of the attorneys were not to be considered as evidence. Johnson does not give much explanation as to why the jury would have come out differently if his attorney's opening statement had been different. In that unrebutted evidence would ultimately reveal that Johnson was seen running from the scene of the crime, if anything the opening statement served to explain to the jury how the defense would show that notwithstanding Johnson's presence at the scene, he did not aid his brother's crime. Therefore, Johnson has not shown a reasonable probability that but for the alleged error by counsel, the jury "would have had a reasonable doubt respecting [his] guilt." Strickland, 466 U.S. 697.
 
 
 18
 Johnson also argues that the ineffectiveness claim should be viewed in connection with his sufficiency of the evidence and incorrect jury instruction claims. However, errors by the court and/or a jury's finding of guilt without sufficient evidence cannot make counsel ineffective based upon the opening statement. The opening statement was made before the case went to the jury and before jury instructions were tendered. Therefore, those claims can have no effect upon prong one of the ineffectiveness test. One could reasonably argue that if counsel had been shown to be deficient in performance, that these other factors should come into play regarding whether such resulted in prejudice. Because Johnson has not satisfied prong one of the test, however, we do not broach that issue here.
 
 
 19
 The third issue is whether there was constitutional error in the trial court's instruction to the jury on aiding and abetting. The defendant claims that there was error in the third paragraph of instruction 17. That paragraph read as follows:
 
 
 20
 Proof of the defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.
 
 
 21
 Johnson argues that this instruction was erroneous because it indicated to the jury that it could find Johnson guilty if it found either that he failed to oppose the commission of the crime, or that he and his brother Timothy were companions.
 
 
 22
 On appeal, Johnson argues that the district court erred when it held that the relief was not warranted because instruction 17 did not have a "substantial and injurious effect or influence in determining the jury's verdict,' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1714 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 766 (1946)). Johnson asserts that the district court improperly determined that Brecht was the governing standard, because this case was not decided until 1993, which was after Johnson had brought his appeal in state court. He argues that the district court should have applied the more lenient standard of Chapman v. California, 386 U.S. 18 (1967), and thereby put the burden upon the state to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict.
 
 
 23
 Johnson's argument is not persuasive. Brecht stands for the proposition that collateral federal relief based upon an error during the proceedings of a state criminal trial requires a greater showing regarding the effect on the verdict than that which a defendant must show to obtain relief on direct review. 113 S.Ct. at 1714. This Supreme Court case did not establish or change the standard that state courts should apply to determine whether a trial error runs afoul of the constitution; it dealt strictly with the limits of relief on collateral review. Therefore, Johnson is off the mark in arguing that this standard did not apply to his case because the state court proceedings took place prior to the Supreme Court's ruling. Brecht pre-dated the district court's denial of relief in the instant case. Therefore, this case, which dealt specifically with the role of federal courts' review of petitions for habeas corpus, is controlling in Johnson's case in the district court and in this Court.
 
 
 24
 Moreover, Brecht did not overrule Chapman, which, while having been cited in some habeas corpus cases, involved direct Supreme Court review of state criminal cases. Brecht was the first case to "squarely address" the standard of harmlessness that federal courts must apply in reviewing state court trial errors. Brecht, 113 S.Ct. at 1718. Thus, Brecht did not reverse a previously established standard that properly would have applied to Johnson's case. Rather, it announced what the proper level of review was. Therefore, Johnson's argument that Chapman, not Brecht, applies to his case fails.
 
 
 25
 We also hold that the district court was correct in its finding that under Brecht the erroneous jury instruction did not warrant relief. Applying the above formulations to the present case, we conclude that the district court was correct in finding that relief was not proper based upon the erroneous jury instruction. Reading the challenged portion of instruction 17 along with the rest of instruction 17 and the other jury instructions, and examining the evidence in this case, the claimed error cannot reasonably be said to have had a substantial and injurious effect on the jury's verdict. The part of the instruction that Johnson alleges is erroneous states that "failure to oppose the commission of a crime [and] companionship with the person committing the offense ... may be considered in determining whether aiding may be inferred." (emphasis added). Even taken alone, this instruction does not say that failure to oppose a crime is a crime itself, but only may be considered evidence of aiding. When looked at in connection with the rest of the jury instructions, the clear message of the jury charge is that one must actually aid in the crime in some manner in order to be found guilty.
 
 
 26
 Beyond the above impediment, Johnson's argument that he is entitled to relief based upon jury instruction 17 fails for a more fundamental reason. The Indiana Court of Appeals held that the instruction was erroneous (though harmless). However, an error of state law is not grounds for granting a petition for habeas corpus, unless the error also violates the United States Constitution or a federal statute. 28 U.S.C. § 2254(a); Estelle v. McGuire, 112 S.Ct. 475, 480 (1991); Mason v. Duckworth, 74 F.3d 815, 818 (7th Cir.1996). In his petition, Johnson alleged that the erroneous instruction violated his Fifth, Sixth, and Fourteenth Amendment rights. However, it is established doctrine that a faulty jury instruction in a state criminal case only amounts to constitutional error if it results in the denial of the defendant's right to due process before being deprived of liberty. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); Falconer v. Lane, 905 F.2d 1129, 1135 (7th Cir.1990).
 
 
 27
 The question of whether a jury instruction violates a defendant's right to due process demonstrates the tension between the breadth and limits on state power in defining and prosecuting criminal conduct. States are free, within broad limits, to define the elements of a crime. Eaglin v. Welborn, 57 F.3d 496, 500 (7th Cir.) (en banc), cert. denied, 116 S.Ct. 421 (1995). However, once the contours of illegal activity are designated, a state may not convict a defendant without proving beyond a reasonable doubt that he engaged in all the elements of the crime. Victor v. Nebreska, 114 S.Ct. 1239, 1242 (1994); Eaglin, 57 F.3d at 501. Here, Johnson does not claim that the crimes that Indiana defined were constitutionally infirm. Rather, Johnson's implicit claim is that the erroneous jury instruction allowed him to be convicted without the state's having proven beyond a reasonable doubt that he engaged in all the elements of the charged crime.
 
 
 28
 Johnson was charged with violating Indiana's burglary and theft statutes. Indiana law provides that one who aids or abets another in a crime is liable as though he himself had committed the crime. IND.CODE § 35-41-2-4. Johnson did not argue that his brother had not committed each of the above crimes. His defense was that he was an innocent bystander rather than an accomplice. Therefore, whether jury instruction 17 violated Johnson's constitutional right to due process turns upon whether it relieved the prosecution of the burden of proving beyond a reasonable doubt that Johnson had engaged in each element of aiding and abetting theft and burglary under Indiana law. Victor, 114 S.Ct. at 1242; Eaglin, 57 F.3d at 501. This inquiry requires examining the challenged instruction in connection with the jury instructions as a whole. Cupp, 414 U.S. at 146; Falconer, 905 F.2d at 1135.
 
 
 29
 In the present case the erroneous jury instruction did not relieve the prosecution of its burden of proving each element of the offense beyond a reasonable doubt. Under Indiana law, one is not guilty as an accomplice unless he aids or abets the principal's crime; he cannot be found guilty based merely upon his presence at the scene or his failure to oppose the crime. Ind.Code § 35-41-2-4; Conrad v. State, 369 N.E.2d 1090, 1092 (Ind.Ct.App.1977). Therefore, the jury could not properly find Johnson guilty in the present case, unless it concluded that the evidence demonstrated beyond a reasonable doubt that he aided or abetted his brother's breaking in to and taking goods from the service station.
 
 
 30
 The challenged portion of instruction 17 says "defendant's failure to oppose the commission of a crime, [and] companionship with the person committing the offense ... may be considered in determining whether aiding may be inferred." (emphasis added). An earlier portion of this same instruction states that one is responsible for another's action when "he knowingly aids, induces or causes the other person to commit a crime." The instruction then defines "aiding" as "knowingly support[ing], help[ing], or assist[ing] in the commission of a crime." This instruction clearly indicates that one must actually assist the principal in the commission of a crime to be responsible as an accomplice. It states that failure to oppose can be considered to determine if aiding can be inferred. It does not say that failing to oppose the crime is itself grounds for guilt. Therefore, this instruction did not relieve the prosecution of the burden of proving that Johnson had aided his brother. Moreover, another portion of the instructions directed the jury that if it had reasonable doubt about the defendant's guilt as charged, then it must acquit him even if it found that he had engaged in other wrongdoing or committed crimes different from those charged. Reading this instruction in connection with the aiding and abetting instruction, we conclude that the instructions clearly indicated that the jury was not to find the defendant guilty unless they concluded beyond a reasonable doubt that Johnson had aided his brother's theft and/or burglary. Therefore, we hold that instruction 17 did not deny Johnson his right to due process and the district court correctly ruled against him on this issue.
 
 
 31
 The fourth issue on appeal is divided into two sub-issues. First, whether the trial court committed constitutional error in refusing the jury's request to see a copy of Johnson's taped statement and a transcript of the statement. Second, whether the court committed constitutional error when it made this decision in Johnson's absence. Johnson did not raise either of these issues in the Indiana collateral proceedings. In his direct appeal, he mentioned both issues. However, he did not argue that there was constitutional error in the trial court's refusal to allow the jury to examine this piece of evidence. With regard to the right of Johnson to be present, he did mention, although only in one sentence without citing any cases, that this violated his Sixth and Fourteenth Amendment rights to be present at his own criminal trial. In neither his petition for habeas corpus nor his appeal to this Court does Johnson argue cause and prejudice. We hold, therefore, that he has procedurally defaulted on his claim that failure to allow the jury to view the tapes and transcript amounted to constitutional error. We hold that Johnson did, however weakly, present a constitutional argument to the Indiana courts regarding the trial court's decision to make this decision in his absence.
 
 
 32
 There are two possible constitutional bases from which Johnson can argue that he had a right to be present when the Judge made the decision in question. None of these, however, prove helpful to Johnson in the present case. First, a "defendant has a sixth amendment right to confront the witnesses or evidence against him." U.S. v. McCoy, 8 F.3d 495 (7th Cir.1993). This right is not implicated in Johnson's case, because "no witness or evidence against [Johnson] was presented" during the exchange in question. Id. It is true that there was an evidentiary issue discussed, but that is different than evidence being presented against a defendant. Second, a "defendant has a due process right to be present ' "whenever his presence has a relation reasonably substantial, to the fulness of his opportunity to defend against the charge." ' " Id. (quoting United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934))). However, " 'only a trial fundamentally unfair in light of the entire proceedings violates" the Due Process Clause in these circumstances. Verdin v. O'Leary, 972 F.2d 1467 (7th Cir.1992) (quoting United States v. Widgery, 778 F.2d 325, 330 (7th Cir.1985)). In the present case, Johnson has made no argument as to how he was harmed by not being present when the judge ruled that the jury could not view a particular piece of evidence. While the decision did not go the way that he claims would have been to his advantage, his being present would not have made any difference. The court consulted his attorney before making its ruling. Thus, Johnson was represented. It was a question of law as to whether to allow the jury to see the tape and transcript. Johnson has not indicated what it is that he could have said or done that would have changed the judge's decision. We hold, therefore, that Johnson is not entitled to relief on issue four.
 
 
 33
 The fifth issue is whether there was sufficient evidence to support the jury's finding of habitual offender status. In the Indiana Courts, Johnson argued this only as a matter of state law. However, respondent did not claim procedural default. Therefore, we will reach the merits of the claim. Blackwell v. Franzen, 688 F.2d 496, 502 (7th Cir.1982), cert. denied, 460 U.S. 1072 (1983).
 
 
 34
 In his petition for habeas corpus and in this appeal, Johnson argues that rules of evidence, both Indiana's and the Federal Rules, were violated when the habitual offender status case was presented. These sources do not provide a basis for a constitutional claim. Therefore, we will simply consider whether the evidence presented was constitutionally sufficient to support the jury's findings.
 
 
 35
 The evidence regarding habitual offender status consisted of documentation of convictions for burglary and theft on June 24, 1985 and April 5, 1982, respectively. With respect to the theft conviction, at trial the court admitted into evidence the arrest report, which contained a thumbprint, (State's Exhibit 14), a form indicating the defendant's commitment to custody for this crime, (State's Exhibit 16), and the information for theft filed in the case, (State's Exhibit 15). In addition, an expert testified for the state that he had fingerprinted the Daniel Johnson who was the defendant. He said that based upon examining the arrest report and the fingerprints he had taken, he concluded the thumbprint on the arrest report was that of the Daniel Johnson who was then being tried.
 
 
 36
 Johnson argues that this evidence is insufficient to show that the Daniel Johnson who committed the previous theft, described in State's Exhibits 14, 15, and 16, is the Daniel Johnson who was convicted in the present case and who now brings this petition. Johnson argues that there was some alteration of the documents and points out that the police report did not indicate a theft charge and indicated courtroom 9, while the commitment to custody indicates courtroom 15. Johnson does not challenge the evidence regarding the burglary conviction.
 
 
 37
 The discrepancy in the documents notwithstanding, the evidence is sufficient to sustain the jury's finding that Johnson was a habitual offender. First, though there is a discrepancy among the documents regarding the courtroom number and the original charge, the additional information upon the documents is sufficient for a factfinder to conclude that the alteration was not material and that the Daniel Johnson who was arrested, as documented in Exhibit 14 and who expert testimony indicates is the same Daniel Johnson convicted in the present case, was the same Daniel Johnson Exhibit 16 indicates was convicted of theft. Second, even if we disregard the arrest report, so that we do not have the fingerprint evidence linking the past history to the present case, the information on Exhibit 16, the defendant's name and the fact that he was charged with theft in Indiana was sufficient for the jury to conclude that this was the same Daniel Johnson who was then on trial.
 
 
 38
 In a petition for habeas corpus claiming insufficient evidence to support a charge, the standard of review is deferential to the finder of fact. Denial of the petition is proper if after viewing the evidence most favorably to the prosecution, any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lemons v. O'Sullivan, 54 F.3d 357, 364 (7th Cir.), cert. denied, 116 S.Ct. 528 (1995). The elements of the habitual offender charge are: 1) the defendant's accumulation of two prior unrelated felony convictions; and 2) the defendant's conviction and sentence for a felony which he committed after sentencing for a prior unrelated conviction. Johnson does not dispute that his present conviction satisfies the second element. Regarding the first element, the only argument that Johnson proffers is that there was insufficient evidence that he was convicted of one of the felonies in question. The above discussion shows that there was sufficient evidence from which the jury could conclude that defendant Daniel Johnson, petitioner in the present case, was the same Daniel Johnson who was convicted of the theft in question in the prior case.
 
 
 39
 The sixth and final issue involves the voluntariness of Johnson's confession. Johnson argues that the confession was obtained involuntarily so that the trial judge committed constitutional error in admitting it into evidence. He also argues that he had a constitutional right to have a jury determine whether his confession was voluntary. The latter argument is without merit. If the trial judge properly ruled that the confession was admissible, then Johnson does not have a constitutional right to have a jury pass on this issue. Lego v. Twomey, 404 U.S. 477, 489 (1972); United States v. Santiago, 582 F.2d 1128, 1134 (7th Cir.1978). Therefore, we only need to determine whether the trial court committed constitutional error in admitting Johnson's confession into evidence.
 
 
 40
 Johnson's claim regarding involuntariness does not state that he was threatened or coerced. Nor does he claim that he was not given Miranda warnings. Rather, he argues (and this was the focus of the suppression hearing) that when he gave his statement to the interrogating officer, he felt compelled to tell him that he took part in the robbery. He adds that he was high on cocaine. He also asserts that although his taped statement was only seven minutes long, police records indicate that Johnson's interrogation lasted from 5:26 to 6:33 A.M. The relevance of this assertion to Johnson's argument appears to be that because the tape did not record the full interrogation, one cannot get an accurate picture of the circumstances surrounding his confession merely by listening to the tape.
 
 
 41
 When, as in the present case, the issue is whether the defendant voluntarily made a given statement, federal courts reviewing a habeas corpus petition must independently determine whether, given the totality of the circumstances, the defendant voluntarily confessed. Perri v. Director, Dept. of Corrections. of Ill., 817 F.2d 448, 452 (7th Cir.), cert. denied, Perri v. Lane, 484 U.S. 843 (1987). This evaluation includes the subsidiary question of whether the trial court made any errors in finding facts at the suppression hearing. These historical facts (such as "who said what" or "what occurred") are entitled to a presumption of correctness if "made after a hearing on the merits ... [and] fairly supported by the record." 28 U.S.C. § 2254(d); Sotelo v. Indiana State Prison, 850 F.2d 1244, 1247 (7th Cir.1988).
 
 
 42
 The historical facts in this case concern the circumstances of Johnson's interrogation. Johnson claims that he was under the influence of cocaine and that the taped confession does not give an accurate picture of the circumstances of his confession because the tape was turned off during the interrogation. At the suppression hearing, Detective Cooper, who interrogated Johnson, testified that the tape was on the entire time of the interrogation, which lasted seven minutes and that he made a clerical error, noting 6:33 on the interrogation form instead of 5:33, thus making it appear as though the tape did not record most of the interrogation. Cooper also testified that although he could not be sure as to whether Johnson had used any drugs on the night of the confession, Johnson told him he was not under the influence of drugs. Cooper, based upon Johnson's demeanor, believed this to be true. At the suppression hearing, the trial judge found that there was insufficient evidence that Johnson was under the influence of drugs or alcohol during the interrogation and that he could comprehend what he was doing. This was based in part upon the judge's listening to the tape of the confession. Although not stated explicitly, the trial judge's ruling upon this issue impliedly found that Cooper was truthful in his statement that 6:33 was a clerical error, and that the entire interrogation was recorded and, therefore, presented an accurate account of what transpired between Johnson and the police during questioning. Based upon the evidence in the record of the suppression hearing, we take these factfindings to be correct.
 
 
 43
 Accepting the state court's determination of historical facts, we must inquire whether these facts indicate the confession was voluntary. Although the state court's findings on this mixed question (where a legal standard is applied to historical facts) is not entitled to a presumption of correctness by a federal district court reviewing a petition for habeas corpus, Perri, 817 F.2d 448, 452 (1987), an appellate court is to review a district court's determination of this mixed question for "clear error." United States v. Baldwin, 60 F.3d 363, 365 (7th Cir.1995), reh'g en banc denied, petition for cert. filed, (September 5, 1995) (No. 95-5845). Thus, we must determine whether the district court was clearly erroneous in its determination that a preponderance of the evidence did not indicate that Johnson's confession was not voluntary.
 
 
 44
 We hold that the district court did not commit error, clear or otherwise. Once Johnson's claims of being under the influence of drugs and wrongdoing by the police in turning off the tape are dismissed as unsupported by the facts, there is nothing else in the record to indicate that Johnson was coerced. The other evidence in the record indicates that the confession was voluntary. Johnson was advised of his Miranda rights. In fact, he signed a form that listed these rights and indicated that he was willing to answer questions. Several minutes after signing this form, Johnson did answer questions and admitted he and his brother discussed the burglary in advance. This is sufficient for us to conclude that a preponderance of the evidence indicates that Johnson's confession was voluntary. See United States v. Taylor, 31 F.3d 459, 463 (7th Cir.1994) (holding that a signed consent form weighs heavily toward finding that consent was valid.) In addition, beyond Johnson's factual claims that we reject based upon the findings at the suppression hearing, there is nothing else in the record to indicate coercion. The fact that the defendant was in police custody at the time of his confession does not by itself support an inference of coercion. Johnson v. Trigg, 28 F.3d 639, 641 (7th Cir.1994). Therefore, we conclude that the district court did not commit clear error in concluding that Johnson made his confession voluntarily. There was no constitutional violation in admitting the confession into evidence.
 
 
 45
 The order of the district court denying Johnson's Petition for Habeas Corpus is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)